UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STUART MEISSNER, JONATHAN ZERON,
JAMES E. ALEMAN, JR. and STEVEN J. SILVESTRO
and others similarly situated.

                     Plaintiffs,

-against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, THE NEW
YORK CITY POLICE DEPARTMENT
LICENSE DIVISION, KEECHANT L. SEWELL,
POLICE COMMISSIONER OF THE CITY OF
NEW YORK, NICOLE BERKOVICH, DIRECTOR
OF THE NEW YORK CITY POLICE
DEPARTMENT LICENSE DIVISION

                     Defendants.
-------------------------------------------------------------------X

**AMENDED COMPLAINT
- CLASS ACTION
AND DEMAND FOR A
JURY TRIAL**

**2023 CV 01907 (NRB) (VF)**

Plaintiffs STUART MEISSNER, JONATHAN ZERON, JAMES E. ALEMAN, JR., and

STEVEN J. SILVESTRO and Others Similarly Situated, through their attorney PETER H.

TILEM, ESQ. of TILEM & ASSOCIATES, P.C., as and for their amended complaint do hereby

state and allege:

## PRELIMINARY STATEMENT

1.      The New York State Penal Law is unique in that it requires that a license be

issued to an individual in order to possess a handgun in any location within New York

State including the person's residence, business, while hunting in the woods, at a gun

store, or at a gun range.  An individual can neither move to New York with a gun that

1

they already lawfully purchased in another State, nor purchase a gun in New York State until they go through a lengthy process to obtain a license in New York State.

2.      The New York State Penal Law further provides that a license to carry a firearm issued to an individual is valid throughout the State except in New York City.  That means that a New York State licensed gun owner intending to carry his firearm for self defense within the five bouroughs must first apply for a license issued by the New York City Police Department before they are legally allowed to enter New York City with their New York State Legal firearm.

3.       New York State does not accept the validity of any gun license from any other State, and individuals from other states who possess valid gun licenses in their home State are frequently arrested in New York City and other places in New York State for possessing firearms without a valid New York State License.

4.      Individuals who apply for a gun license in New York State must go through a lengthy process that pursuant to the New York State Penal Law shall not take longer than six months.

5.      The individual named Plaintiffs are all law-abiding citizens who have lawful firearms in other jurisdictions. Plaintiffs Meissner and Zeron have applied for gun licenses from Defendants.  Both Plaintiffs Meissner and Zeron waited far in excess of six months. Plaintiff Meissner received his gun license only after the filing of the initial complaint in this action and Plaintiff Zeron has still not received a response.  Neither Plaintiff has ever received any notice explaining the delay beyond the six-month statutory limit.

2

6.      This is an action brought to vindicate Plaintiffs' rights under the Second and Fourteenth Amendments of the Constitution of the United States as well as New York State Law.

7.      Under New York State Penal Law 400.00 (4-b) as amended by Legislation, Chapter 371 of the Laws of 2022, effective September 1, 2022, Section 4-b, "Processing of License Applications," "**Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months** of the date of presentment of such application to the appropriate authority." [Emphasis Supplied.]

8.      Under New York Penal Law §400(6) "A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except **that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city**." [Emphasis Supplied.]

9.      Both Plaintiffs, Stuart Meissner and Jonathan Zeron applied for gun licenses with the NYPD License Division, and neither individual has any criminal record whatsoever.

10.     Plaintiff Stuart Meissner applied for his premise license and rifle license on September 6, 2021. It was not approved until after the filing of the instant action on March 20, 2023.

11.     Plaintiff Jonathan Zeron applied for his Special Carry License on June 23, 2022, he was notified to come in for an in-person interview on March 6, 2023, and be fingerprinted.  On March 6, 2023, Mr. Zeron was told that the interview is done and the

application is now in the investigation stage. It has been almost 17 months since Mr.

Zeron's application was submitted and more than 7 months since he was fingerprinted.

12.     Mr. Meissner, at the time of the filing of this action had received only one license,

but had been prevented from registering either of his two legally owned firearms, and had

received his handgun license only after filing the initial complaint in this case.

13.     Neither plaintiff ever received any communication from the NYPD License

Division explaining these excessive delays, as they are required by law to provide.

14.     The excessive delays by the NYPD License Division paralyzes those such as

Plaintiffs Meissner and Zeron, who wish to exercise their Second Amendment rights in

New York City because they are forced to wait for a decision, and are precluded from

filing an appeal until a decision is made. Even when a license is granted, the NYPD

License Division requires further arbitrary documentation from the gun owner in order to

register the firearm.

15.     This is an undeniable and protracted abrogation of the Second Amendment and

statutory rights of law abiding individuals' rights under New York State Law and the

United States Constitution as set forth in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S.

Ct. 2111, 2138 n.9 (2022).

16.     ". . .[B]ecause any permitting scheme can be put toward abusive ends, we do not

rule out constitutional challenges to shall-issue regimes where, for example,

lengthy wait times in processing license applications or exorbitant fees deny ordinary

citizens their right to public carry."[1]

---

[1] *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022)

17.     Upon information and belief neither Plaintiff Meissner nor Plaintiff Zeron are being singled out.  Rather, the wait times they are experiencing are part of a deliberate, willful, and wanton attempt to deny individuals their rights under the Second and Fourteenth Amendments.

18.     The NYPD License Division is further obstructing individuals' rights under the Second and Fourteenth Amendment by requiring Permit Authorization Numbers and seller's signatures for individuals to register their firearms. These requirements are often impossible to meet. Gun stores do not always give out these numbers, or may have gone out of business, and so such information is unavailable through no fault of the gun owner.

19.     Per the Second Amendment, Plaintiffs' right to keep and bear arms shall not be infringed, yet the NYPD License Division continues to infringe upon this right by delaying the approval of applicants' licenses and by adding unnecessary and irrelevant steps to slow down or stop the licensing process.

20.     The Supreme Court of the United States has reiterated that the right to keep and bear arms is guaranteed to the citizens by the United States Constitution, that the Second Amendment is not a privilege, it is a right, and that right has been incorporated to the states.[2]

21.     The Supreme Court and other federal courts have reiterated the importance and validity of the right to own a gun for self-defense in the home, and the right to own a gun outside the home as well.[3]

22.     Gun ownership and possession is a right and not a privilege, and it therefore follows that, in places such as New York where gun licenses are legally required, gun

---

[2] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[3] *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 213 L ED 2d 387, 142 S Ct 2111, 2149 (2022).

license applications must be processed in a timely manner, as required by the Constitution and statute.

23.     By way of background, after the most recent Supreme Court decision invalidating New York's subjective gun licensing regime, New York State responded by passing a slew of new unconstitutional laws.

24.     Federal Courts have already found several parts of New York State's broad gun laws which further attempted to restrict access to firearm licenses for law abiding citizens, such as the Plaintiffs to be unconstitutional.[4]

25.     The Supreme Court of the United States has acknowledged that constitutional challenges will be permitted in cases of lengthy wait times in processing license applications.[5]

26.     ". . .[T]here are more instances of the abridgment of the freedom of the people, by gradual and silent encroachments of those in power, than by violent and sudden usurpations. . ." James Madison, General Defense of the Constitution, [6 June] 1788.

27.     Licensing officials may not arbitrarily abridge the Second Amendment right to bear arms.[6] Defendant's actions are doing just that by delaying the processing of gun license applications and setting up additional and unnecessary roadblocks once the application is granted.

---

[4] In July of 2022, New York State passed the Concealed Carry Improvement Act ("CCIA")which replaced the N.Y. Penal Law §400.00(2)(f) which conditioned the issuance of an unrestricted license to carry a handgun in public on the existence of "proper cause". CCIA replaced the "proper cause" standard with a definition of the "good moral character" that is required to complete the license application or renewal process. *Antonyuk v. Hochul,* 122CV0986GTSCFH, 2022 WL 5239895 (NDNY Oct. 6, 2022).
[5] *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 213 L ED 2d 387, 142 S Ct 2111, 2149 (2022).
[6] *Antonyuk v Bruen,* 122CV0734GTSCFH, 2022 WL 3999791, at *2 [NDNY Aug. 31, 2022]

28.     There is no justifiable reason for these extensive delay, and Plaintiffs'
applications should be approved quickly given that both Plaintiff Meissner and Plaintiff
Zeron have absolutely no criminal record.

29.     Plaintiffs request that a federal monitor be appointed to oversee the NYPD
License Division and ensure that there is no corruption or infringement upon the
Constitutional rights of those seeking gun licenses. They have shown time and time again
that they will infringe on the rights of gun owners and this court has a duty to stop this
infringement.

30.     Plaintiffs also seek an award of compensatory damages and attorneys' fees.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over federal claims pursuant to 28
U.S.C. §§1331, 1342(a) (3-4). This action is brought pursuant to 42 U.S.C. §§1983 and
1988 and 42 U.S.C. §2000d for violations of the Second and Fourteenth Amendments to
the Constitution of the United States. Venue is proper pursuant to 28 U.S.C.
§§1931(b)(1) and (b)(2) in that Defendants are located in, and Plaintiffs' claim arose in,
the Southern District of New York.

32.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## CLASS ACTION ALLEGATIONS

33.     **Proposed Class.** The proposed class compromises all similarly situated
individuals who have applied for firearms licenses with the defendants and have been
waiting for their gun licenses for a period of over six months, or have received their
licenses but have been barred from registering their firearms, and have no criminal
convictions in their past.

34.     **Ascertainability.** The identity of all class members is readily ascertainable from Defendant's records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure. To be effective, class notice should be provided through written communication to each class member's last known address as reflected in Defendants' records.

35.     **Numerosity.** The size of the class makes a class action both necessary and efficient.

36.     **Common Questions of Law and Fact.** This case poses common questions of law and fact affecting the rights of both class members, including:

a)  Whether the Defendants have violated the Second and Fourteenth Amendments by failing to approve or deny gun licenses within the required six months;

b)  Whether the Defendants have violated 42 U.S.C. §1983 by failing to follow policy and failing to train licensing officers on the proper procedures for approving or denying gun licenses;

c)  Whether Plaintiff's are entitled to a *Monell* claim due to the unconstitutional policies and practices of the Defendants;

d)  Whether Defendants have violated the Due Process Clause of the Fourteenth Amendment.

37.     **Typicality.** The claims of the individual Plaintiffs are typical of the claims of the class as a whole.  Defendants' unresponsiveness and lack of decision making are typical of the unlawful policies and practices that have and will continue to operate to deny other class members their right to keep and bear arms. The Defendant's have a long and verifiable history of violating individuals' Second Amendment rights as guaranteed under the Second and Fourteenth Amendments.

38.     **Adequacy of Class Representation.** Each individual  Plaintiff can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, and not agnostic to, the interests of the class.

39.     **Propriety of Class Action Mechanism.** Defendants have prevented the class from receiving their firearm licenses, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole. Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class. The prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudication, which would establish incompatible standards of conduct for Defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

40.     This action is properly maintainable as a class action under Federal Rules of Civil Procedure ("FRCP") 23(b)(2) and 23(b)(3).

## PARTIES

41.     At all times relevant to this action, Plaintiff Stuart Meissner was a resident of the County of New York in the State of New York.

42.     Plaintiff Stuart Meissner is an attorney, a former New York County Assistant District Attorney, a former Assistant Attorney General from the New York State Attorney General's Office and owns firearms.

43.     At all times relevant to this action, Plaintiff Jonathan Zeron was a resident of the County of Westchester, State of New York.

44.     Plaintiff Jonathan Zeron is a Federal Firearms License holder and has been licensed in New York, New Jersey, Connecticut, New Hampshire, Massachusetts, Washington DC, Maryland, Pennsylvania, Utah, Florida, Maine, Arizona and can carry firearms legally in all of those  states. He also possesses a carry permit issued by Westchester County. He is an NRA Certified Instructor, State instructor for Maryland, Washington DC and Massachusetts.

45.     Plaintiff James E. Aleman, Jr. is a New Jersey resident who possesses a valid New Jersey Concealed Carry License.  He is a law-abiding citizen with no criminal record and is a self-employed contractor who also works part-time in a firearm retail store which sometimes requires him to deliver and pick up firearms.

46.     Plaintiff Steven J. Silvestro is a New Jersey resident who possesses a valid New Jersey Concealed Carry License.  He is a law-abiding citizen with no criminal record and is a employed as a truck driver.

47.     Defendant THE CITY OF NEW YORK (hereinafter "CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and for which it is ultimately responsible.

48.     Defendant the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD") acts as Defendant CITY's agent in the area of law enforcement. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

49.     At all times relevant hereto, Defendant CITY, acting through Defendant NYPD, was responsible for the policy, practice, supervision, implementation and conduct of all

NYPD matters and was responsible for the appointment, training, supervision and conduct of all NYPD personnel. In addition, at all relevant times, Defendant CITY was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

50.     Defendant NEW YORK CITY POLICE DEPARTMENT LICENSE DIVISION (hereinafter "NYPD License Division") is the entity within the NYPD responsible for approving or disapproving all applications, including renewals and revocations, of handgun licenses in New York City.

51.     The CITY and the NYPD received federal financial assistance at all times relevant to this Complaint. Defendant CITY is also the employer of the individual Defendants and is a proper entity to be sued under 42 U.S.C. §1983.

52.     Defendant KEECHANT L. SEWELL[7] was the POLICE COMMISSIONER OF NEW YORK CITY POLICE DEPARTMENT, (hereinafter "SEWELL") and at all relevant times was acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of her employment as such, and acting under color of state law. On information and belief, SEWELL, as Commissioner of NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the training, supervision, and conduct of all NYPD personnel, including the Defendants referenced herein.

53.     Defendant NICOLE BERKOVICH, is the DIRECTOR OF THE NEW YORK CTY POLICE DEPARTMENT LICENSE DIVISION, (hereinafter "BERKOVICH") and at all relevant times was acting in the capacity of agent, servant, and employee of

---

[7] On July 17, 2023 Police Commissioner Sewell was replaced by Police Commissioner Edward Caban.

Defendant CITY, within the scope of her employment as such, and acting under color of state law. On information and belief, BERKOVICH, as Director of the NYPD License Division, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD License Division matters and was responsible for the training, supervision, and conduct of all NYPD License Division personnel, including the Defendants referenced herein.

54.     At all times relevant, the Defendants were acting under color of law in the course and scope of their duties and functions and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants acted with the power and authority vested in them under the laws of the State of New York.

## STATEMENT OF FACTS

55.     Defendant NYPD License Division, located at One Police Plaza in Manhattan, New York County, is the entity within the NYPD responsible for approving or disapproving all firearms' applications, including renewals of handgun licenses in New York City. Additionally, Defendant NYPD License Division can suspend or revoke handgun licenses.

56.     Defendant NYPD License Division preforms its task under the regulations set forth in Title 38 of the New York City Rules. See 38 RCNY 1-01.

57.     New York State Penal Law §400 4-a states that applications for licenses must be acted upon by a licensing officer within six months from the date the application is submitted.

58.     Both Plaintiffs, Mr. Meissner, and Mr. Zeron, have waited or are waiting for a period of far in excess of the six months limit to receive their firearms licenses.

59.     Both Plaintiffs are legal firearm owners. Mr. Meissner owns a pistol and a shotgun, which he kept safely, and legally in New Jersey. Mr. Zeron is a licensed gun owner, who has a gun license in many states, including New York, and is a Federal Firearms Licensee.

60.     Mr. Meissner applied for his premise license and his rifle license on September 9, 2021.

61.     Therefore, Mr. Meissner should have received either a denial or an approval for by March 9, 2022.

62.     Instead, Mr. Meissner received just his rifle license, not his premise handgun license.

63.     However, Mr. Meissner's shotgun license was meaningless after it was received, as the NYPD License Division had refused to allow Mr. Meissner to register his shotgun and bring it into New York City.

64.     In response to the shotgun application, the NYPD License Division requested a "Permit No Authorization", and the seller's signature on the Disposition Report Certification, and a bill of sale, from Mr. Meissner.

65.     Mr. Meissner was able to track down his bill of sale and sent this to the NYPD License Division.

66.     The two firearms that Mr. Meissner owns were purchased several years ago from a store in Rockland County, New York.

67.     Upon reaching out to the original gun store where he purchased his firearms, Mr,
Meissner was informed that the store does not give buyers an authorization number. The
store also refused to go back through their records to find an authorization letter.

68.     Mr. Meissner sent a letter to the NYPD License Division explaining this, and that
he was prevented from bringing his firearms to his home, but the letter was ignored. The
NYPD License Division Responded only by highlighting the areas of the application that
needed to be filled out and returned the bill of sale.

69.     While Mr. Meissner was granted his license from the NYPD License Division, he
was still unable to register the firearm, and unable to get in contact with anyone in the
NYPD License Division until the filing of this lawsuit.  He did finally receive his
approval on March 20, 2023.  More than 18 months after his application was submitted
on September 6, 2021.

70.     Mr. Mr. Meissner is a former prosecutor and is now a managing member of
Meissner Associates, a law firm in New York.

71.     **Mr. Meissner has a completely clean criminal record, and has never been
arrested for anything**.

72.     Mr. Meissner intended to bring his firearms to his home in New York City and
would have done so except that he had been prevented by the defendants' refusal to
approve his firearms license and by refusing to register his long arms.  He did not bring
his guns into New York, despite his intent to do so for fear of being arrested by
Defendants.  He therefore had his constitutional rights violated by the Defendants until he
was forced to file this action.

73.     Title 38 of the New York City Rules §5-10 lists the grounds for a denial of handgun licenses. Mr. Meissner does not meet any of these grounds, and there was no reason for his premise permit to be denied. It is black letter law that he has a fundamental right to handgun possession in his home.

74.     Mr. Meissner waited well over the maximum six months that New York State law imposes on licensing officers for his license to be approved.

75.     As for Mr. Zeron, he applied for his license on June 23, 2022, and therefore, he should have been denied or approved by December 22, 2022. To date, his application has neither been granted or denied.

76.     Mr. Zeron also has a clean criminal record, and based on Title 38 of the New York City Rules §5-10, there is no reason that he should be denied his license.

77.     Mr. Zeron is licensed to carry guns in the state of New York, and many other states. Besides possessing a Federal Firearms License, Mr. Zeron has a license to carry a firearm in New York, New Jersey, Connecticut, New Hampshire, Massachusetts, Washington DC, Maryland, Pennsylvania, Utah, Florida, Maine, Arizona and can carry legally in all of those states. He also possesses a carry permit issued by Westchester County, New York. He is an NRA Certified Instructor, State instructor for Maryland, Washington DC and Massachusetts.

78.     Mr. Zeron has a Federal Firearms License ("FFL") which allows him to engage in a business pertaining to the manufacture or importation of firearms, or the interstate or intrastate sale of firearms. FFL dealers are required to follow strict rules and regulations.

79.     Plaintiff Zeron intends to carry his firearm into New York City and enters the City on a regular basis.  He has not brought his firearm into New York City and has not

been able to use his Federal firearms License in New York City under fear of being arrested by the Defendants.

80.     New York City prohibits New York State residents with New York State issued carry licenses from entering any of the five boroughs.  These licensed gun owners must apply for a separate license. This is unconstitutional, these gun owners should not be barred from entering an entire city.

81.     Under the New York Concealed Carry Improvement Act ("CCIA") , concealed-carry of firearms has been banned in certain sensitive locations. These areas include, but are not limited to, schools, places used for performance art, Times Square, locations providing health care services, and public parks.

82.     Defendants here are attempting to classify the entire City of New York as a sensitive location. This list of sensitive locations is unconstitutional and infringing upon the rights of gun owners. While there is historical support for prohibiting the carrying of firearms in specific locations, the CCIA goes way beyond that, in attempting to ban concealed-carry virtually everywhere.[8]

83.     The NYPD License Division has an extensive history of corruption, denial of individuals rights under the Second and Fourteenth Amendments and exceedingly long wait times for gun license applications.[9]

---

[8] *Antonyuk v. Hochul,* 122CV0986GTSCFH, 2022 WL 5239895 (NDNY Oct. 6, 2022).
[9] In 2016, the NYPD License Division came under fire after an in-depth federal investigation into corruption. Many police officers were removed from their prior positions in the License Division and placed on administrative leave or retired. (See Larry Celona, *Head of scandal-plagued NYPD division quietly retires,*
https://nypost.com/2017/04/30/head-of-scandal-plagued-nypd-division-quietly- retires (last visited October 13, 2023).) Indeed, United States Attorney Joon Kim described the corruption in the NYPD License Division and specifically the improper behavior of the officers who "allegedly sold their oath to serve and protect, they sold their duty to do their jobs, they just issued gun licenses to whoever the bribing expediters brought them without conducting the necessary background checks, without questioning their need for a gun license and without following up on major red flag." (See CBS, *Former Police Officers, Ex-Brooklyn Assistant DA Arrested In NYPD Gun License*

84.     From in or about 2013 through 2016, NYPD officers in the License Division were found to have solicited and accepted bribes from gun license expediters.

85.     This bribery scheme allowed well connected New Yorkers to be issued gun permits much faster than they would have, had they gone through the application process and proper channels.

86.     One former NYPD lieutenant was sentenced to eighteen months in prison for conspiring to bribe fellow officers in connection with this scheme. A former NYPD patrol leader was sentenced to thirty-two months in prison for bribery and conspiracy to commit bribery. Two other officers were found guilty of extortion, conspiracy to commit bribery and making false statements. The lieutenant and one officer even opted to retire from the force in order to focus solely on the bribery scheme and go into business as "expediters". [10]

87.     A former prosecutor was also involved in the scheme and was sentenced to a year in prison after being convicted of bribery, honest services fraud, and conspiracy to commit bribery. [11]

88.     The corruption within the NYPD License Division has led to longer wait times for applicants, like the Plaintiffs here, who have licenses in other states and have no reason to be denied a permit in New York City.

---

*Bribery Scandal*, http://newyork.cbslocal.com/2017/04/25/nypd-gun-license-bribery-scheme-case (last visited October 13, 2023).)
[10] United States Department of Justice, Former New York City Police Department Official Sentenced To 18 Months For Conspiring To Bribe Fellow Officers In Connection With Gun License Bribery Scheme (https://www.justice.gov/usao-sdny/pr/former-new-york-city-police-department-official-sentenced-18-months-conspiring-bribe).
[11] Former Assistant District Attorney Convicted In Manhattan Federal Court Of Bribery And Fraud Relating To Gun Licenses Lawyer Convicted of Bribing New York City Police Department Sergeant to Give Favorable Treatment to his Clients in Gun License Matters  (https://www.justice.gov/usao-sdny/pr/former-assistant-district-attorney-convicted-manhattan-federal-court-bribery-and-fraud). (last visited October 13, 2023).)

89.     Gun permits routinely take over a year to be issued by the NYPD License Division, even though they are required to be issued within six months, barring valid reasons for a delay.

90.     The NYPD License Division even denies gun permits and registrations to those who have been licensed gun owners for years.

91.     The NYPD License Division has gone out of their way to evade judicial review in the past. They have done this by repealing unconstitutional laws or granting licenses once lawsuits are initiated, leaving gun owners with no way to assert their claims against the NYPD License Division. [12]

92.     By reason of the NYPD License Division's actions, Plaintiffs Meissner and Zeron have been deprived of their constitutional rights, not only to possess a firearm license, but to receive due process of law.

93.     Plaintiffs Aleman and Silvestro are both New Jersey residents who lawfully and safely own, possess and carry firearms in the State of New Jersey.

94.     Plaintiffs Aleman and Silvestro visit New York City and intend to carry their firearms for the lawful purpose of self-defense.

95.     Plaintiffs Aleman and Silvestro have not carried their firearms into New York City when they come here for fear of being arrested by the Defendants who routinely arrest individuals for possessing firearms in New York while in possession of valid firearms license issued by States other than New York State.

96.     Plaintiffs Aleman and Silvestro have a constitutional right under the Second Amendment to carry firearms for their own self-protection.

---

[12] *New York State Rifle & Pistol Assn., Inc.* v. *City of New York*, O. T. 2019, No. 18–280, pp. 5–7.

97.     Plaintiffs' Aleman and Silvestro's rights guaranteed under the Second

Amendment do not stop at the New York border.

98.     Plaintiffs Aleman and Silvestro should not need to ask permission from the

Defendants to exercise their Constitutional rights and should not have to wait for more

than a year to do so as Plaintiffs Meissner and Zeron did.

99.     Upon information and belief, Defendants do not issue licenses to non-residents

who do have a business address in New York.

100.    This means that Plaintiffs Aleman and Silvestro have no legal means to exercise

their Constitutional rights in New York.

101.    Plaintiffs Aleman and Silvestro already have valid firearms licenses issued by the

State of New Jersey.

102.    These facts illustrate the carelessness and indifference of the NYPD License

Division to respect the constitutional right to keep and bear arms, as per the Second

Amendment.

## FIRST CLAIM
## VIOLATION OF 42 U.S.C. §1983 THROUGH DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING, AND SUPERVISION IN VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS AND IN VIOLATION OF 42 U.S.C. § 1981

103.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

104.        42 U.S.C. §1983 provides that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State or
> Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding
> for redress…

105. Plaintiffs in this action are citizens of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

106. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

107. Plaintiffs had the following clearly established rights at the time of the complained of conduct: (a) the right to keep and bear arms, under the Second Amendment; and (b) the right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. §1981, and the right to carry a firearm outside their home for their own self-protection.

108. Defendants knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

109. The acts or omissions of Defendants as described herein intentionally deprived Plaintiffs of their constitutional and statutory rights and caused them other damages.

110. Defendants are not entitled to qualified immunity for the complained of conduct.

111. Defendants, at all times relevant, were policymakers for the CITY and the NYPD and in that capacity established policies, procedures, customs, and/or practices for the City of New York.

112. These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of both Mr.

Meissner and Mr. Zeron's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action.

113.    Defendants have created and tolerated an atmosphere of lawlessness, and have developed and maintained long standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiffs and of the public.

114.    In light of the duties and responsibilities of police officers to serve and protect and uphold the laws of the United States and the State of New York, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

115.    The deliberately indifferent training and supervision provided by Defendant CITY resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants CITY, the NYPD, and the NYPD license Division and were moving forces in the constitutional and federal violation injuries complained of by Plaintiffs.

116.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered damages and losses as described herein, entitling them to compensatory damages, in amounts to be determined at trial.

117.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1998,

pre-judgement interest and costs as allowably by federal law. There may also be special

damages for lien interests.

118.    Finally, Plaintiffs seek appropriate declaratory and injunctive relief pursuant to 42

U.S.C. §1983 to redress Defendants' above described ongoing deliberate indifference in

policies, practices, habits, customs, usages, training and supervision with respect to the

rights described herein, and with respect to the ongoing policy and/or practice of the

NYPD and the NYPD License Division, which Defendants have no intention to

voluntarily correct such policy and/or practice despite an obvious need for such

correction.

### SECOND CLAIM
### *MONELL* CLAIM FOR FAILURE TO TRAIN OR PROPERLY SUPERVISE IN VIOLATION OF 42 U.S.C. §1983

119.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

120.        42 U.S.C. §1983 provides that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State or
> Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding
> for redress…

121.    Plaintiffs in this action are citizens of the United States and Defendants to this

claim are persons for purposes of 42 U.S.C. §1983.

122.    The Defendants to this claim at all times relevant hereto were acting under the color of state law.

123.    Both Plaintiffs Meissner and Zeron are lawful firearms owners, with clean criminal records who have had applications pending with Defendants for a period longer than six months.

124.    The Defendants violated Plaintiffs' Meissner and Zeron's  constitutional rights and State and federal law by allowing this excessive delay and failing to provide Plaintiffs with any notice regarding their firearms applications.

125.    All of the acts and omissions by the individual defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agencies, the NYPD, and the NYPD license division.

126.    Defendants CITY, the NYPD, and the NYPD License Division, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

127.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY, the NYPD, and the NYPD License Division, all under the supervision of ranking officers of the NYPD.

128.    The aforementioned customs, practices, procedures and rules of the CITY, the NYPD, and the NYPD License Division include, but are not limited to ignoring the

requirement that they provide either a reason for a denial, or an approval of a firearm license within six months of the application being submitted.

129.    The existence of the aforesaid unconstitutional customs and policies may be demonstrated and inferred from the widespread pattern and practice of delaying the decision of firearms licenses for many months and even years and the total disregard for New York State law requiring a decision in 6 months or an explanation why there was no decision.

130.    The policies in the NYPD license division created an environment where corruption, bribery and kickbacks became established practice and there was a complete disregard of the rights of the citizens of New York City by the NYPD License Division, as demonstrated by the 2016 corruption scandal within the NYPD License Division, and the lack of timely approvals or denials of gun licenses.

131.    The existence of the above-described unlawful *defacto* polices and/or well-settled and widespread customs and practices is known to, encourages and or condoned by supervisory and policy making officers and officials of the NYPS, the NYPD License Division, and the CITY including without limitation, Defendant BERKOVICH and Defendant SEWELL.

132.    All of the foregoing acts by the individual defendants deprived Plaintiffs of federally protected rights, including but not limited to, the constitutional rights enumerated in the allegations of the prior paragraphs incorporated herein.

133.    The CITY knew or should have known that the acts alleged herein would deprive Plaintiff of his rights, in violation of the Second and Fourteenth Amendments to the United States Constitution.

134.    The CITY is directly liable and responsible for the acts of the individual defendants because it repeatedly and knowingly failed to properly supervise, train, instruct and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY, the NYPD, and the NYPD License Division, and to require compliance with the laws of the United States Constitution.

135.    Despite knowledge of such unlawful *defacto* policies, practices, and/or customs, these supervisory and policy making officers and officials of the NYPD, the NYPD License Division, and the CITY, including Defendant SEWELL and Defendant BERKOVICH, have not taken steps to terminate these policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

136.    The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the procedures and policies detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual Defendants felt empowered to continue to delay the approval of firearm licenses past the six-month requirement.

137.    Mr. Meissner and Mr. Zeron's injuries are a direct and proximate result of the CITY, the NYPD, and the NYPD License Division's wrongful *defacto* policies and/or

well-settled and widespread customs and practices and of the knowing and repeated failure of Defendants CITY, the NYPD, and the NYPD License Division to properly supervise, train, and discipline their police officers.

138.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

139.    Finally, Plaintiffs seek appropriate declaratory and injunctive relief pursuant to 42 §1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the NYPD and the NYPD License Division, which Defendants have no intention to voluntarily correct such policy and/or practice despite an obvious need for such correction.

**THIRD CLAIM**
**VIOLATION OF DUE PROCESS RIGHTS**
**(Against All Defendants)**

140.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

141.    Plaintiffs have a constitutionally protected interest in being able to legally exercise their Second Amendment rights.

142.    Plaintiffs are entitled to due process commensurate with the seriousness of receiving a firearm license and asserting their Second Amendment rights and the potential discipline and sanctions they faced.

143.    Plaintiffs were entitled to fundamentally fair procedures and to receive notice regarding the status of their applications within the required six months.

144.    Both Plaintiffs Zeron and Meissner were lawful firearm owners outside the City

of New York with clean criminal records whose license applications had been pending

for a period longer than six months at the time that this action was filed.

145.    As a result of the due process violations herein, Mr. Meissner and Mr. Zeron were

left without recourse while they waited to hear the status of their applications.

146.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988,

pre-judgment interest and costs as allowable by federal law. There may also be special

damages for lien interests.

147.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42

§1983 to redress Defendants' above described ongoing deliberate indifference in policies,

practices, habits, customs, usages, training and supervision with respect to the rights

described herein, and with respect to the ongoing policy and/or practice of the NYPD and

the NYPD License Division, which Defendants have no intention to voluntarily correct

such policy and/or practice despite an obvious need for such correction.

**FOURTH CLAIM**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14th AMENDMENT TO THE**
**UNITED STATES CONSTITUTION**
**(Against All Defendants)**

148.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

149.    Plaintiffs have a constitutionally protected interest in being able to legally

exercise their Second Amendment rights.

150.    The due process provisions of the Fourteenth Amendment to the United States

Constitution apply to the application process, including approval, disapproval and the

hearing and appeals of the process used by the Defendants against Plaintiffs.

151.     Plaintiffs are entitled to due process commensurate with the seriousness of receiving a firearm license and asserting their Second Amendment rights.

152.     Plaintiffs were entitled to fundamentally fair procedures to determine whether their firearm licenses should have been approved Defendants failed to provide adequate due process when it failed to approve, or deny, Defendants firearm licenses within six months.

153.     Both Plaintiffs Zeron and Meissner were lawful firearm owners outside the City of New York with clean criminal records whose license applications had been pending for a period longer than six months at the time that this action was filed.

154.      As a result of the due process violations herein, Mr. Meissner and Mr. Zeron are left at a standstill waiting to hear the status of their applications.

155.     Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

156.     Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the NYPD and the NYPD License Division, which Defendants have no intention to voluntarily correct such policy and/or practice despite an obvious need for such correction.

**FIFTH CLAIM**
**VIOLATION OF THE SECOND AND FOURTEEN AMENDMENT TO THE UNITED**
**STATES CONSTITUTION AND THE FULL FAITH AND CREDIT CLAUSE FOR**

## REFUSING TO ACCEPT THE VALIDITY OF FIREARMS LICENSES OF OTHER STATES AND OTHER COUNTIES IN NEW YORK STATE
### (Against All Defendants)

157.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

158.     Mr. Zeron, Mr. Aleman and Mr. Silvestro have a constitutionally protected interest in being able to legally exercise their Second Amendment rights and have the legal and constitutional right to carry a firearm outside of their homes for their own self-protection.

159.     The above defendants accept the State Driver's Licenses of all other States and Territories and accept driver's licenses that are issued to New York residents without regard to the residential county of the motorist.  Upon information and belief they even accept the driver's licenses from other countries.

160.     Driving is a privilege and not a right yet the Defendant's grant full reciprocity for out-of-state driver's licenses and licenses issued anywhere in New York State.

161.     Plaintiffs are entitled to Second Amendment rights with the seriousness of any other rights and those rights do not end at state or municipal lines or borders.

162.     Could you imagine if each State and more absurdly each City within each state required a separate Driver's License?  It would be almost impossible to drive across the United States without years of planning and applications to apply for driver's licenses in each jurisdiction that a person would drive through.

163.     The Defendant's must give full faith and credit to the concealed carry licenses of other States and other Counties within New York State.

164.    The Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const., Art. IV, § 1.

165.    "That Clause requires each State to recognize and give effect to valid judgments rendered by the courts of its sister States. It serves 'to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation.'" [13]

166.    Plaintiff Zeron intends to carry his firearm in New York City but has not done so for fear of being arrested because of the Defendant's unlawful and unconstitutional policy of refusing to accept his Westchester County license or the licenses of any of the many states that he is licensed to carry a firearm in.

167.    Plaintiff Aleman intends to carry his firearm in New York City but has not done so for fear of being arrested because of the Defendant's unlawful and unconstitutional policy of refusing to accept his New Jersey State license to carry a firearm.

168.    Plaintiff Silvestro intends to carry his firearm in New York City but has not done so for fear of being arrested because of the Defendant's unlawful and unconstitutional policy of refusing to accept his New Jersey State license to carry a firearm.

169.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

---

[13] See V. L. v. E. L., 577 U.S. 404, 407 (2016), internal citations omitted.

170.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the NYPD and the NYPD License Division, which Defendants have no intention to voluntarily correct such policy and/or practice despite an obvious need for such correction.

## **JURY DEMAND**

171.    Plaintiffs demand a jury trial in this action on each and every one of their damage claims.

**WHEREFORE,** Plaintiffs demand judgement against Defendants, individually and jointly, and prays for relief as follows:

1. That they be compensated for violation of their constitutional rights;

2. That they be awarded punitive damages against the defendants;

3. That they be compensated for attorneys' fees and the costs and disbursements of this action;

4. That the Court order such remedial action to address the Defendant's wanton and willful violations of statutory and Constitutional rights as the Courts deems just and proper;

5. That the Court issue a declaratory judgment declaring the actions of the Defendant's herein unconstitutional;

6.   That the Court order the Defendants to take such actions as are necessary to stop the

Defendants' illegal and unconstitutional actions;

7.   That a federal monitor be appointed to monitor the Defendants and ensure they are

adhering to constitutional and statutory requirements and protections; and

8.   For such other further and different relief as the Court may deem just and proper.

Dated: White Plains, New York
        October 16, 2023

PETER H. TILEM, ESQ.
TILEM & ASSOCIATES, P.C.
ATTORNEYS FOR PLAINTIFFS
188 EAST POST ROAD
WHITE PLAINS, NEW YORK 10601
914-833-9785