UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STUART MEISSNER, JONATHAN ZERON, JAMES E.
ALEMAN, JR. and STEVEN J. SILVESTRO and others
similarly situated.

                                                2023 CV 01907 (NRB) (VF)

                          Plaintiffs,

                  -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,
KEECHANT L. SEWELL, POLICE COMMISSIONER
OF THE CITY OF NEW YORK, NICOLE BERKOVICH,
DIRECTOR OF THE NEW YORK CITY POLICE
DEPARTMENT LICENSE DIVISION

                          Defendants.
------------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR A JUDGMENT ON THE PLEADINGS

                                    MURIEL GOODE-TRUFANT
                                    Acting Corporation Counsel of the
                                    City of New York
                                    Attorney for Defendants
                                    100 Church Street
                                    New York, New York 10007
                                    Tel: (212) 356-1646

Michelle Goldberg-Cahn,
Nicholas Ciappetta,
Jessica Katzen,
          *of Counsel.*


August 12, 2024

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A JUDGMENT ON THE PLEADINGS

Defendants the City of New York ("City"), the New York City Police Department ("NYPD"), the NYPD License Division ("License Division"), Edward A. Caban, Police Commissioner of the City of New York,[1] and Nicole Berkovich, Director of the License Division (collectively "Defendants"), submit this memorandum of law in support of Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") dismissing Plaintiffs' Fifth Cause of Action for failure to state a cause of action.

## STANDARD FOR DISMISSAL

The standard for granting a motion for judgment on the pleadings brought under 12(c) of the FRCP is indistinguishable from the standard of review for a motion to dismiss pursuant to FRCP 12(b)(6). See Ad-Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll., 835 F.2d 980, 982 (2d Cir. 1987).  On such a motion, the Court is required to accept the material facts alleged in the complaint as true and to construe all reasonable inferences in favor of the nonmoving party. See Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 188 (2d Cir. 1998); BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC, 859 F.3d 188, 191 (2d Cir. 2017). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988); CONMED Corp. v. Fed. Ins. Co., 590 F.Supp.3d 463, 468–69 (N.D.N.Y. 2022).

---

[1] Edward A. Caban replaced Keechant L. Sewell as Commissioner of the New York City Police Department on July 17, 2023.  Pursuant to Federal Rule of Civil Procedure 25(d), the successor of a public officer is automatically substituted as a party when the originally named public officer "ceases to hold office while the action is pending."

"To survive the dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While detailed factual allegations are not required, the Complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555.  Nor is it sufficient to provide naked assertions devoid of any factual support. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotation marks and citations omitted).

Here, Plaintiffs do not meet that standard in regards to its Fifth Cause of Action. For the reasons set forth below, Defendants' motion for a judgment on the pleadings should be granted.

## ARGUMENT

### PLAINTIFFS LACK A CAUSE OF ACTION AS THE FULL FAITH AND CREDIT CLAUSE DOES NOT CREATE A PRIVATE RIGHT OF ACTION.

The Complaint alleges that Plaintiffs Aleman and Silvestro are residents of New Jersey with valid permits, issued by New Jersey, to carry a concealed weapon in the state. See Complaint ¶¶ 93, 98.  Despite not residing in New York State or New York City, Plaintiffs Aleman

and Silvestro wish to carry firearms for their own protection when they visit New York City. <u>See</u> <u>id.</u> at ¶ 94.  Plaintiffs do not, however, state how often they visit New York City, when they last visited New York City, or when they intend to visit again.

New York City has a robust statutory framework for the licensing of firearms. <u>See,</u> <u>e.g.</u>, New York Penal Law ("Penal Law") Article 400; New York City Administrative Code ("Administrative Code") § 10-131; Title 10, Chapter 3 of the Administrative Code, Rules of the City of New York ("RCNY") Title 38.  New York City's firearm regulations, which set forth eligibility criteria for the issuance of various types of licenses and require all firearm licensees to be "of good moral character," are intended to safeguard residents and visitors from crime resulting from the improper use of firearms.  Any person who seeks to keep or carry a firearm within New York City must apply to the NYPD License Division for a license. <u>See</u> Administrative Code § 10-131.  A recent amendment to the RCNY permits persons residing outside of New York State and not principally employed within New York City to apply for a license to carry a handgun within New York City. <u>See</u> 38 RCNY § 5-03(b). <u>See</u> Ex. A.[2]

Plaintiffs allege that the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution requires that New York City allow Plaintiffs to carry concealed weapons in New York City (and throughout the State) without a license from the NYPD based solely on the concealed carry permits issued by the State of New Jersey. <u>See</u> Complaint ¶ 98.  Plaintiffs' claim must be dismissed, because there is no individual federal right of action arising from the Full Faith and Credit Clause, and the Full Faith and Credit Clause does not require New York City to substitute its firearm regulations for those of another state.

---

[2]    The emergency rule is also publicly available at https://a856-cityrecord.nyc.gov/RequestDetail/20240809002 (last accessed August 12, 2024).

The Full Faith and Credit Clause states:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Constitution, art. IV, § 1.  It is understood that the "purpose of the Full Faith and Credit Clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." Milwaukee County v. M.E. White Co., 296 U.S. 268, 276–77 (1935).  The Full Faith and Credit Clause has always been interpreted narrowly.  Scholars contend that the first sentence of the clause was intended as an evidentiary command—requiring state courts to admit statutes, judgments, and non-judicial records from other states as conclusive proof of their existence and contents. See Ralph U. Whitten, Symposium on the Implications of Lawrence and Goodridge for the Recognition of Same-Sex Marriages and the Validity of DOMA: Article: Full Faith and Credit for Dummies, 38 Creighton L. Rev. 465, 466 (2005). The second sentence of the clause gave power to Congress to declare the effect that such statutes, records, or judgments had to be given in other states. See id. at 467.

The Full Faith and Credit Clause was effectuated in federal law in 1790 by the Full Faith and Credit Act, now codified at 28 U.S.C. § 1738.  The Full Faith and Credit Act in its current form provides, in pertinent part:

> Such Acts, records and judicial proceedings or copies thereof [of any State, Territory, or Possession of the United States], so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in

4

> the courts of such State, Territory or Possession from which
> they are taken.

Shortly after its enactment, the U.S. Supreme Court interpreted the Full Faith and Credit Act as requiring that judgments be given the same effect in a court of another state as in the state it was rendered. See Mills v. Duryee, 11 U.S. 481, 485 (1813).  However, the Court's early interpretations of the Full Faith and Credit Clause and Full Faith and Credit Act did not mention application of the Clause or Act to public acts and statutes.

The U.S. Supreme Court first began applying the Full Faith and Credit Clause to public acts in the 20th Century, and its approach has evolved throughout the years. See Whitten, Symposium, 38 Creighton L. Rev. at 469.  The Court's modern view is that the Full Faith and Credit Clause must be applied less strictly to statutes as it is to judgments. See Baker v. General Motors Corp., 522 U.S. 222, 232 (1998) ("Our precedent differentiates the credit owed to laws (legislative measures and common law) and to judgments.").  While "[r]egarding judgments . . . the full faith and credit obligation is exacting," "[t]he Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with subject matter concerning which it is competent to legislate.'" Id. at 232–33 (quoting Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n, 306 U.S. 493, 501 (1985)).

Today, in practice, the Full Faith and Credit Clause is applied as standard that requires courts to give res judicata effect to judgments issued by other state courts. See Adar v. Smith, 639 F.3d 146, 151 (5th Cir. 2011) ("the clause and its enabling statute created a rule of decision to govern the preclusive effect of final, binding adjudication from one state court or tribunal when litigation is pursued in another state or federal court."). The Fifth Circuit has explained that the "right" conferred upon a litigant by the Full Faith and Credit Clause is "to have a sister state judgment recognized by the courts of the subsequent forum state," and a "forum's

5

failure to properly accord full faith and credit is subject to ultimate review by the Supreme Court of the United States." Id.

In regards to statutes, the Full Faith and Credit Clause is applied in multi-state litigation as a limit to state choice-of-law. See Ralph U. Whitten, Article: Choice of Law, Jurisdiction, and Judgment Issues in Interstate Adoption Cases, 31 Cap. U.L. Rev. 803, 807–08 (2003). The Full Faith and Credit Clause provides a standard to apply when determining which state's law should apply to a matter involving parties or occurrences from multiple states. The U.S. Supreme Court has held that the test for determining whether a state can apply its law to a case is the same under the Full Faith and Credit Clause and the Due Process Clause: whether the state has sufficient contacts with the person and events in the litigation. See Allstate Ins. Co. v. Hague, 449 U.S. 302, 308 (1981) (finding that Minnesota state court's decision to apply Minnesota substantive law to case involving automobile accident between Wisconsin residents that occurred in Wisconsin did not violate the Due Process Clause or Full Faith and Credit Clause because Minnesota had sufficient contacts with the parties and occurrences); Sun Oil v. Wortman, 486 U.S. 717, 722–23 (1988) (finding that Kansas state court properly interpreted Full Faith and Credit Clause and Due Process Clause when applying Kansas statute of limitations to class action, even when substantive law of Texas, Oklahoma, and Louisiana was applied to determine liability for interest on contracts arising from those states).

**A. The Full Faith and Credit Clause Does Not Create an Individual Right of Action**

The Full Faith and Credit Clause has not been recognized as creating an individual right of action in federal court. Courts have consistently declined to hear claims "arising" from the Full Faith and Credit Clause, often on the basis of lacking subject matter jurisdiction, because the Clause creates a standard of review and not a federal right of action. In Minnesota v. Northern

Sec. Co., 194 U.S. 48, 72 (1904), the U.S. Supreme Court explained that the Full Faith and Credit Clause "only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records and judicial proceedings of a State other than that in which the court is sitting" and "to invoke the rule which it prescribes does not make a case arising under the Constitution or laws of the United States." See also Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 291–92 (1888), overruled in part on other grounds by Milwaukee Cty., 296 U.S. at 278 (The Full Faith and Credit Clause and Full Faith and Credit Act "establish a rule of evidence, rather than of jurisdiction"); Thompson v. Thompson, 484 U.S. 174, 182 (1988) ("[T]he Full Faith and Credit Clause, in either its constitution or statutory incarnations, does not give rise to an implied federal cause of action."). The Second Circuit has also explained that the Full Faith and Credit Clause and Full Faith and Credit Act cannot on their own confer federal subject matter jurisdiction, but instead set a standard that can be applied in cases where the court already has jurisdiction. See Vera v. Republic of Cuba, 867 F.3d 310, 320 (2d Cir. 2017) (citing Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 n.1 (5th Cir. 1974) ("a claim based upon [the Full Faith and Credit Act] will not alone suffice to make out a case 'arising under' the Constitution of laws of the United States for the purpose of asserting § 1331 federal question jurisdiction.  Consequently, a fight over the enforcement of a state court judgment is not automatically entitled to a federal arena.")).

   As such, Plaintiffs cannot state a cause of action arising from the Full Faith and Credit Clause.  Plaintiffs cannot establish a federal right of action, and therefore, are not entitled to challenge the State's (and City's) refusal to grant reciprocity to concealed carry permits issued by the state of New Jersey for purposes of carrying a firearm within the state of New Jersey in federal court.  "Section 1983 has no place in the clause's orchestration of inter-court comity—state

courts may err, but their rulings are not subject to declaratory or injunctive relief in federal courts." <u>Adar</u>, 639 F.3d at 151–52 (finding that the federal district court lacked subject matter jurisdiction to hear plaintiff's claim of whether the Louisiana Registrar improperly refused to give full faith and credit to a New York State adoption decree).  As such, Plaintiffs' Fifth Cause of Action must be dismissed. <u>See Caballero v. Fuerzas Armadas Revolucionarias de Colombia</u>, 945 F.3d 1270, 1275 (10th Cir. 2019) (holding that plaintiff seeking to register Florida state court judgment in Utah federal court "cannot rely on § 1738 to supply federal subject-matter jurisdiction"); <u>Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Constr. Co.</u>, 607 F.3d 1268, 1276 (11th Cir. 2010) (finding that federal court lacks subject matter jurisdiction over suit seeking to enforce Tribal Court judgment in district court, because "it is long established that § 1738 does not, standing alone, confer jurisdiction on a federal district court to domesticate a judgment rendered by a court of another jurisdiction.").

### B. The Full Faith and Credit Clause Does Not Apply to Unreviewed Agency Determinations

Even if Plaintiffs could state a claim under the Full Faith and Credit Clause, Plaintiffs' claim would fail, because the Full Faith and Credit Clause does not require one state (or municipality) to replace its regulatory schemes with those of another.  The Full Faith and Credit Clause "requires state court judgments to receive the same credit, validity, and effect in every other court in the United States," <u>Vera</u>, 867 F.3d at 320, but a concealed carry permit is not a state court judgment subject to the Full Faith and Credit Clause.  Applications for carry handgun permits are investigated, and permits are issued by the New Jersey State Police (not the New Jersey court system) pursuant to eligibility criteria determined by the New Jersey State Legislature. <u>See</u> New Jersey Statutes Annotated ("NJSA") § 2C:58-4(d).  It is well established that the Full Faith and Credit Clause does not apply to agency determinations. <u>See Astoria Fed. Sav. & Loan Ass'n v.</u>

8

Solimino, 501 U.S. 104, 109 (1991) ("§ 1738 is inapplicable to the judicially unreviewed findings of state administrative bodies.").

Plaintiffs try to draw a comparison between the treatment by states of out-of-state drivers' licenses and out-of-state firearm licenses, arguing that the Full Faith and Credit Clause requires states to give full effect to both driver's and firearm licenses issued in other states. See Complaint ¶ 29.  For one, Plaintiffs cite to no authority supporting their allegation that reciprocal recognition of out-of-state driver's licenses is required by the Full Faith and Credit Clause.  Indeed, states afford reciprocity to out-of-state driver's licenses pursuant to interstate compacts as a matter of public policy.  From the early years of driver's license regulation, states have typically recognized and given effect to out-of-state driver's licenses, viewing the issue of automobile travel as inherently interstate, and adopting policies reflecting a "one license principle." See Letter from NYS Dep't of Motor Vehicles, June 10, 1965, Bill Jacket, L 1965, ch 650 at 15.[3]

For example, most states, including New York, are members of the Driver License Compact ("DLC"). See New York Vehicle and Traffic Laws ("VTL") § 516.  The DLC, established in the early 1960s in response to the growth of the automobile industry after World War II, includes measures for sharing of information between states, such as mandatory reporting of convictions. See id.  In deciding to enter into the DLC in 1965, New York legislators reasoned that "[w]ith increased mobility in the modern auto-motive age, the problems of traffic safety become increasingly matters which require interstate cooperation," and that "[t]he exchange of information provided by the compact would aid New York in the regulation of its drivers convicted of those offenses committed out of state." Assembly Mem in Support, Bill Jacket, L 1965, ch 650 at 12. There is no language in the DCL or in the legislative history of New York's adoption of it

---

[3] A copy of the bill jacket is annexed hereto in the Appendix.

that suggest that such reciprocity is mandated by the Full Faith and Credit Clause (or any other law).

Secondly, there is no comparison between driver's licenses and firearm licenses. Unlike driving, carrying a firearm is not an inherently interstate matter, but a matter of public safety governed by the police powers of each state. As such, unlike with driver's licenses, firearm licensing has historically been regulated by states and municipalities. See Bach v. Pataki, 408 F.3d 75, 78 (2d Cir. 2005) (explaining that New York State's first statewide firearm application requirements limited licenses to citizens and residents of New York State). There is also no similar legal framework that would facilitate such reciprocal recognition for firearm licenses. For instance, while an individual with a driver's license from any state may drive through New York State, no individual may hold an unexpired New York State driver's license while holding a driver's license issued by any other jurisdiction. See VTL § 509(10). The requirement that an individual possess just one driver's license from a single state makes such reciprocity feasible—it eliminates the potential confusion that would arise if an individual possessed driver's licenses in multiple states and just one was revoked or suspended. No similar limit exists regarding firearm licenses. Further, in addition to the DCL, there are systems in place to support the nationalized treatment of driver's license, such as the Non-Resident Violator Compact, which standardizes methods used by various jurisdictions to process non-resident violations, and the National Driver Register and Problem Driver Pointer Systems, which is maintained by the United States Department of Transportation and provides states with a database to easily search individual's driver status and history.[4] No such measures exist for information sharing and license tracking

---

[4] See American Association of Motor Vehicle Administrators, Driver License Compact (DLC)/Non-Resident Violator Compact (NRVC) Executive Board, available at https://www.aamva.org/about/aamva-leadership/committees-working-groups/standing-

between states with respect to firearms.  The treatment of driver's licenses between the states is therefore a unique matter of public policy, and in no way should guide the treatment of firearm licenses.

Indeed, Courts have consistently refused to apply the Full Faith and Credit Clause to require states to waive their own licensing requirements regarding professional licenses just because an individual is licensed in another state.  For instance, the Ninth Circuit rejected a plaintiff's claim that California's requirement that he pass the California Bar Examination before practicing law in California courts violated the Full Faith and Credit Clause because he was already licensed to practice law in New Jersey and Pennsylvania. See Giannini v. Real, 911 F.2d 354, 360 (9th Cir. 1990).  The Court found that plaintiff's "claim lacks merit because no act, record or judicial proceeding, in New Jersey or Pennsylvania, states that [plaintiff] is entitled to practice law in California." Id.  See also Laws for Fair Reciprocal Admission v. United States, 22-civ-2399, 2023 WL 145530, *20 (D.N.J. Jan. 10, 2023) ("a state's judgment that an individual should be admitted to its own bar establishes only eligibility in that jurisdiction pursuant to its rules. It does not follow [that] an individual should automatically be entitled to bar admission in a different state or federal court."); Thaw v. Lynch, 2:15-cv-01703, 2016 WL 1045527, *11 (D. Ariz. Mar. 15, 2016) (rejecting argument that Arizona's requirement that attorneys practicing in the state be members of good standing of the State Bar of Arizona violates the Full Faith and Credit Act, "because no other state has declared Plaintiffs members of the Arizona bar, which is the relevant requirement.").

---

committees/dlc-nrvc-executive-board (last accessed July 29, 2024); National Highway Traffic Safety Administration, National Driver Register (NDR), available at https://www.nhtsa.gov/research-data/national-driver-register-ndr (last accessed July 29, 2024).

Likewise, a New Jersey carry permit gives a person license to carry a handgun within the State of New Jersey only. <u>See</u> NJSA § 2C:58-4(a) ("Any person who holds a valid permit to carry a handgun issued pursuant to this section shall be authorized to carry a handgun in a holster concealed on their persons **in all parts of this State** . . .") (emphasis added).  In other words, Plaintiffs' New Jersey firearm licenses do not permit carry outside of New Jersey because New Jersey did not make any decision that Aleman and Silvestro are entitled to carry anywhere except within the state of New Jersey.  The issuance of a concealed carry permit by a state simply means that the individual has satisfied that particular state's eligibility criteria.  It does not establish eligibility to carry in another state or nationwide.  Plaintiffs essentially seek to nationalize firearm licensing.  Under Plaintiffs' reasoning, an applicant could apply to a state with minimal or even no licensing requirement, and then be allowed to carry in every state in the United States.  This is contrary to the Supreme Court's reasoning in <u>New York State Rifle & Pistol Ass'n v. Bruen</u>, 597 U.S. 1 (2022), which permits licensing by states to evaluate whether an applicant is a law-abiding, responsible citizen.  In finding that there is a constitutional right to carry a firearm, the U.S. Supreme Court did not suggest that there must be a national or interstate scheme for concealed carry licensing.  Indeed, the Court endorsed the licensing regimes of 43 states. <u>See</u> <u>id.</u> at 13 n. 1, 38 n. 9.

The scheme Plaintiffs seek would also remove all discretion from state licensing agencies.   In upholding New York State's "good moral character" requirement for firearm licensees under the <u>Bruen</u> standard, the Second Circuit held that it is proper for licensing officers to have discretion in firearm licensing determinations. <u>See</u> <u>Antonyuk v. Chiumento</u>, 89 F.4th 271, 69–70 (2d Cir. 2023), <u>vacated</u>, 23-910, 2024 WL 3259671 (July 2, 2024) ("<u>Bruen</u> does not forbid discretion in licensing regimes—on contrary, the <u>Bruen</u> Court specifically stated that its decision

did not imperil the validity of more than a dozen licensing schemes that confer discretion materially identical to the [Concealed Carry Improvement Act of 2022].").  Requiring New York State and New York City to give effect to out-of-state licenses would allow anyone already licensed in any other state to bypass the regulatory scheme enacted by the New York State Legislature and New York City Council, remove all discretion from the NYPD Licensing Division and other licensing officers, and deny the State and City an important tool in protecting public safety.

As a New Jersey handgun carry permit is an administrative decision unreviewed by a state court, and does not authorize carry outside of the state of New Jersey, the Full Faith and Credit Clause does not require New York City to grant such license reciprocity.[5]

## C.  Plaintiffs Misunderstand the Mandate of the Full Faith and Credit Clause

Even if a New Jersey carry permit were a judgment required to receive "full faith and credit" in New York, the Full Faith and Credit Clause would not require New York State or New York City to grant it full reciprocity.  As discussed supra, the Full Faith and Credit Clause requires state courts to give an out-of-state judgment res judicata effect—it does not require state or city agencies to effectuate or administer that judgment.  For instance, in Rosin, 599 F.3d 574 (7th Cir. 2009), the Seventh Circuit rejected an argument that it was a violation of the Full Faith

---

[5] To the extent that Plaintiffs allege that Plaintiff Zeron has been denied rights under the Full Faith and Credit Clause because New York City does not grant reciprocity to concealed carry licenses issued by other New York State counties, Plaintiffs fail to state a claim. See Complaint ¶ 166.  Not only is the Full Faith and Credit Clause not applicable to Plaintiff Zeron's situation for the reasons set forth above—a firearm permit issued is an unreviewed agency determination that establishes eligibility to carry in New York State counties outside of New York City only, but the Full Faith and Credit Clause also in no way requires uniformity in licensing requirements, or reciprocity for licenses among municipalities within a state.  Additionally, Plaintiffs' claim is moot with regard to Plaintiff Zeron, because the NYPD License Division has issued Plaintiff Zeron a concealed carry license that establishes his eligibility to carry a concealed firearm in New York City and throughout New York State. See Ex. B.

and Credit Clause for Illinois to require plaintiff to register as a sex offender based on a guilty plea made in New York under the assurances that plaintiff would not be required to register in New York. For one, the New York order did not contain language preventing any other state from requiring plaintiff to register on a sex offender registry, which the Court found to be "dispositive, for without it there is no judgment to which Illinois is required to afford full faith and credit." Id. at 576.

Importantly, the Court also explained that despite the "exacting operation" of the Full Faith and Credit Clause "with respect to judgments," the "primary operational effect of the Clause's application is for claim and issue preclusion (res judicata) purposes." Id. (internal citations omitted). The Court found it to be "a profound mistake to jump . . . to the conclusion that New York can dictate the manner in which Illinois may protect its citizenry" as "New York has no extra-territorial jurisdiction to exercise police power in Illinois." Id. Further, the Court asserted that the Full Faith and Credit Clause "cannot be used by one state to interfere impermissibly with the exclusive affairs of another" Id. at 577. Therefore, "Illinois's recognition of the New York order does not carry with it an obligation that Illinois enforce that order in the manner which it apparently prescribes." Id. at 576. See also Adar, 639 F.3d at 152 (finding that Louisiana is bound by a New York adoption decree, but the Full Faith and Credit Clause did not require the Louisiana Registrar to update the child's birth certificate in a manner contrary to Louisiana's laws for maintaining vital statistics records, because "'[e]nforcement measures do not travel with the . . . judgment'") (citing Baker, 522 U.S. at 235).

As such, the only possible applicability of the Full Faith and Credit Clause would be to prevent a ruling by an out-of-state court that Aleman and Silvestro are not licensed to carry in New Jersey. The Full Faith and Credit Clause would not require New York to give such permit

effect outside of New Jersey.  Plaintiffs' New Jersey carry permits do not purport to give license to Plaintiffs to carry a firearm outside of the state of New Jersey.  New Jersey also does not have police power over New York City, and the Full Faith and Credit Clause cannot be used to interfere with the manner in which New York City chooses to protect its citizenry. Under Plaintiffs' argument, New York City would be forced to issue carry permits to even those individuals lacking in good moral character, simply because another state decided to do so.  Logically, this would also require New York City to deny a permit to carry in New York City just because another state rejected an application by the same person to carry in that state. This result would upend federalism, which is not the intent behind the Full Faith and Credit Clause.

### D.  The Full Faith and Credit Clause Does Not Require States to Replace its Own Statutes with those of Other States

Finally, while the Full Faith and Credit Clause also applies to "public acts," the U.S. Supreme Court has long warned against "resort to the Full Faith and Credit Clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." Pac. Emp'rs, 306 U.S. at 501. The U.S. Supreme Court has explained that a "rigid and literal enforcement of the Full Faith and Credit Clause" in regards to statutes would lead to an "absurd result" because "wherever the conflict arises, the statute of each state [would] be enforced in the courts of the other . . . ." Alaska Packers Ass'n v. Indus. Accident Comm'n, 294 U.S. 532, 547 (1935).

In fact, Courts have applied these principles to find that the Full Faith and Credit Clause does not require one state to issue a firearm license to an individual just because they were issued a firearm license in another state. In In re Winston, 438 N.J. Super. 1 (N.J. Super. Ct. App. Div. 2014), the plaintiff was convicted of various felonies in New York, but was issued certificates for both convictions from New York courts that granted relief from all enumerated disabilities or

15

forfeitures imposed by reason of his conviction.  The plaintiff was then denied a firearm permit in New Jersey, as his criminal convictions disqualified him under New Jersey law.  The Court found that the Full Faith and Credit Clause did not require New Jersey to give effect to the New York certificates, because they did not alter or affect the underlying criminal convictions. Id. at 8.  The Court applied the longstanding principle that the Full Faith and Credit Clause "'does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state, even though that statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events.'" Id. at 9 (quoting Pac. Empl'rs, 306 U.S. at 502).  As such, the Full Faith and Credit Clause did not compel New Jersey to abandon its firearm permit law, which the Court considered "part of the careful grid of regulatory provisions comprising our firearm laws." Id. at 6 (internal citations omitted).

Likewise, the Full Faith and Credit Clause does not require New York City to grant reciprocity to Plaintiffs' New Jersey carry licenses.  Requiring New York City to substitute its own statutory scheme for that of any other state or municipality just because a person has received a permit elsewhere first is contrary to decades of Supreme Court precedent and would lead to absurd results.  For all of the reasons set forth above, Plaintiffs fail to state a claim arising out of the Full Faith and Credit Clause and Plaintiffs' Fifth Cause of Action must be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff's Fifth Cause of Action should be dismissed.

Dated:  New York, New York
     August 12, 2024

           MURIEL GOODE-TRUFANT
           Acting Corporation Counsel of the
           City of New York
           Attorney for Defendants
           100 Church Street
           New York, New York 10007
           (212) 356-1646

           *Jessica Katzen*
           Jessica Katzen
           Assistant Corporation Counsel