UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STUART MEISSNER, JONATHAN ZEVRON,
JAMES E. ALEMAN, JR., and STEVEN J.
SILVESTRO, individually and all others similarly
situated,

                    *Plaintiffs*,

          v.

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY POLICE
DEPARTMENT LICENSE DIVISION, KEECHANT
L. SEWELL, Police Commissioner of the City of New
York, NICOLE BERKOVICH, Director of the New
York City Police Department License Division,

                    *Defendants*,

LETITA JAMES, Attorney General of the State of
New York,

                    *Intervenor*.

No. 2023-cv-01907

**ORAL
ARGUMENT
REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT
# OF MOTION TO DISMISS

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
SARAH COCO
  *Assistant Solicitor General*
    *of Counsel*
MEGHANA BHARADWAJ
  *Law Intern*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for
28 Liberty Street
New York, NY 10005
(212) 416-6312

Dated: August 12, 2024

## TABLE OF CONENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF THE CASE .................................................................... 2

    A.  New York's Firearm Licensing Laws ...................................... 2

    B.  This Action ......................................................................... 3

ARGUMENT ........................................................................................ 4

    Plaintiffs' Constitutional Challenges to New York's Firearm Licensing
Laws Should Be Dismissed ............................................................... 5

    A.  The Court Should Dismiss Plaintiffs' Full Faith and Credit
Clause Claim. ................................................................... 5

        1.  The Full Faith and Credit Clause does not grant a private
right of action. ........................................................... 5

        2.  The Full Faith and Credit Clause does not require New York
to give effect to New Jersey's firearm licensing laws. ....... 6

    B.  The Complaint Fails to State a Claim Under the Second
Amendment. ................................................................... 12

    C.  The Complaint Fails to State a Claim Under the Privileges and
Immunities Clause. .......................................................... 15

CONCLUSION ................................................................................... 20

## PRELIMINARY STATEMENT

Plaintiffs James Aleman and Steven Silvestro are New Jersey residents who possess licenses to carry firearms in New Jersey. In this action under 42 U.S.C. § 1983, plaintiffs contend that the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, requires New York officials to allow them to carry firearms in New York based solely on the fact that plaintiffs have New Jersey licenses. Plaintiffs also contend, albeit obliquely, that New York's firearm-licensing laws violate the Second Amendment and the right to travel protected by the Privileges and Immunities clause, U.S. Const. art. IV, § 2, cl. 1. This Court should dismiss plaintiffs' constitutional claims.

First, this Court lacks jurisdiction over plaintiffs' Full Faith and Credit Clause claim because they fail to allege a valid federal cause of action. Moreover, plaintiffs' claim is based on a fundamental misunderstanding of the Full Faith and Credit Clause. Decades of precedent make clear that the Clause ensures the recognition of judgments across State lines but leaves States free to maintain their own laws within their borders. That includes state-specific licensing and registration laws, such as firearm licensing laws, which have been consistently upheld in the face of Full Faith and Credit Clause challenges in both federal and state courts.

Second, the allegations in the operative complaint regarding plaintiffs' Second Amendment and right to travel claims are so threadbare as to merit dismissal on that basis alone. The claims are baseless in any event. As the Supreme Court recognized in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the Second Amendment does not prevent States from establishing state-specific firearm licensing

regimes. To the contrary, local licensing requirements are part of a well-established historical tradition of firearm regulation. And contrary to plaintiffs' arguments, nonresidents are permitted to apply for a firearm license in New York and are thus treated no differently than residents under the law.

## STATEMENT OF THE CASE

### A.    New York's Firearm Licensing Laws

Like dozens of States, New York requires a license to carry a concealed firearm in public. *See* Penal Law §§ 265.03 (criminalizing possession of loaded firearm), 265.20(a)(3) (exempting license holders). Penal Law § 400.00(1), titled "Eligibility," sets forth basic eligibility criteria for a license to carry a concealed firearm in public, including being at least twenty-one years old, not having a felony record, and having "good moral character," defined as "having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others," Penal Law § 400.00(1)(b). Every applicant for a concealed carry license is required to demonstrate compliance with these eligibility requirements by meeting in person with the licensing officer for an interview, *id.* § 400.00(1)(o), and submitting statutorily specified information, *id.* § 400.00(1)(o)(i)-(v). Applicants are also required to complete eighteen hours of firearm safety training. *Id.* § 400.00(1)(o)(iii), (19).

Firearm carrying licenses are issued by localities within New York. If an applicant resides or is principally employed in New York or maintains a principal place of business in New York as a merchant or storekeeper, they must apply for a

2

license in the county of their residence, employment, or principal place of business. Penal Law § 400.00(3)(a).

New York has long required that individuals wishing to carry firearms in New York City must obtain a license issued by the City, or a special permit if the individual has already obtained a license elsewhere. *See id.* § 400.00(6). The requirement to obtain a special permit issued by the City has several exemptions, including for carrying firearms through the City in a locked container, carrying by armored car security guards, and carrying by active and former law-enforcement officers. *See id.* Localities may establish and apply more restrictive licensing requirements than the State at large. *Id.* § 400.30. The City has its own regulations pertaining to the issuance of firearm carrying licenses and permits. *See* 38 R. City of N.Y., ch. 5.

## B.    This Action

In March 2023, plaintiffs filed this putative class action lawsuit under 42 U.S.C. § 1983 against New York City, the New York City Police Department, and City officials, alleging claims related to the City's firearm licensing process. Am. Compl. ¶¶ 9-11 (Oct. 16, 2023), ECF No. 26.

Plaintiffs also raised constitutional challenges to New York's firearm licensing laws. As relevant to those claims, plaintiffs James Aleman and Steven Silvestro are New Jersey residents who possess New Jersey firearms licenses. *Id.* ¶¶ 45-46. Aleman and Silvestro seek to carry firearms in New York City when visiting. *Id.* ¶¶ 94-95. They have not applied for a New York firearm license. Letter (March 19, 2024), ECF No. 35. Aleman and Silvestro challenge the requirement that an individual obtain a

New York State license to carry a firearm within the State, *see* Penal Law §§ 265.03, 265.20(a)(3), as applied to persons who have valid out-of-state licenses. Plaintiffs contend that this requirement violates the Full Faith and Credit Clause and the Second and Fourteenth Amendments.[1] Am. Compl. ¶¶ 157-170.

On April 1, 2024, the Court granted the Attorney General's motion to intervene in this case to defend the constitutionality of New York's firearm licensing laws, pursuant to 28 U.S.C. § 2403(b) and Rule 24(a)(1) of the Federal Rules of Civil Procedure.[2] Order (April 1, 2024), ECF No. 37.

## ARGUMENT

The plaintiff bears the burden of showing that the court has constitutional or statutory power to adjudicate his claim. *See Collins v. City Univ. of N.Y.*, No. 21-cv-9544, 2023 WL 1818547, at *3 (S.D.N.Y. Feb. 8, 2023). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, plaintiffs have failed to state a claim as to their constitutional challenges to New York's firearm licensing laws.

---

[1] Plaintiff Jonathan Zeron also asserts that Penal Law § 400.00(6), which requires that an individual licensed elsewhere in New York state obtain a separate permit to carry a firearm in New York City, violates the Second Amendment. *See id.* ¶¶ 79-80. This Court has stayed adjudication of that claim pending the Second Circuit's decision in *Frey v. Bruen*, No. 23-365 (2d Cir., argued Jan. 30, 2024). *See* Order (May 16, 2024), ECF No. 41.

[2] The Attorney General takes no position on plaintiffs' challenges to the City's policies or practices to the extent those challenges do not involve the constitutionality of the underlying state statutes.

PLAINTIFFS' CONSTITUTIONAL CHALLENGES TO NEW YORK'S
FIREARM LICENSING LAWS SHOULD BE DISMISSED

**A.    The Court Should Dismiss Plaintiffs' Full Faith and
Credit Clause Claim.**

The Full Faith and Credit Clause requires States to give "Full Faith and Credit
. . . to the public Acts, Records, and judicial Proceedings of every other State." U.S.
Const., art. IV, § 1. Plaintiffs' claim under the Full Faith and Credit Clause should
be dismissed for two reasons. First, neither the Full Faith and Credit Clause nor 42
U.S.C. § 1983 provide a right of action to assert this claim in federal court. Second,
plaintiffs' claim fails on the merits because the Full Faith and Credit Clause does not
require New York to permit persons to carry firearms in the State based on their
receipt of a firearm carry license in a different State.

**1.    The Full Faith and Credit Clause does not grant a
private right of action.**

At the outset, plaintiffs' claim should be dismissed because plaintiffs fail to
allege a federal cause of action over which this court may exercise jurisdiction. The
Full Faith and Credit Clause "prescribes a rule by which courts . . . are to be guided
when a question arises in the progress of a pending suit as to the faith and credit to
be given by the court to the public acts, records, and judicial proceedings of [another
state]." *Minnesota v. Northern Sec. Co.*, 194 U.S. 48, 72 (1904). Accordingly, "the Full
Faith and Credit Clause, in either its constitutional or statutory incarnations, does
not give rise to an implied federal cause of action." *Thompson v. Thompson*, 484 U.S.
174, 182 (1988); *see also Anglo-Am. Provision Co. v. Davis Provision Co.*, 191 U.S. 373,
374 (1903) (the Clause "establishes a rule of evidence rather than of jurisdiction").

Nor can plaintiffs rely on 42 U.S.C. § 1983 to provide a cause of action. *See* Am. Compl. ¶ 170. The Full Faith and Credit clause does not give rise "to a right vindicable in a § 1983 action." *Adar v. Smith*, 639 F.3d 146, 154 (5th Cir. 2011) (en banc). Rather, the clause governs the preclusive effect of foreign judgments in state and federal courts, but "does not contemplate requiring an executive officer" of a State to give effect to a foreign judgment "without the intermediary of a state court," as plaintiffs seek to do here. *Id.* at 158 (dismissing § 1983 claim based on the Full Faith and Credit Clause); *see also Stewart v. Lastaiti*, 409 F. App'x 235, 236 (11th Cir. 2010) (per curiam) (same); *Brown v. City of Chi.*, No. 19-cv-2411, 2020 WL 489522, at *3 (N.D. Ill. Jan. 30, 2020) (same).

### 2.    The Full Faith and Credit Clause does not require New York to give effect to New Jersey's firearm licensing laws.

Plaintiffs' claim also fails on the merits because the Full Faith and Credit Clause does not require New York's firearm licensing laws to give way to another State's licensing laws. In applying the Full Faith and Credit Clause, the Supreme Court has consistently drawn a clear distinction between statutes and judgments. *See Franchise Tax Bd. v. Hyatt*, 538 U.S. 488, 494 (2003); *Baker ex rel. Thomas v. General Motors Corp.*, 522 U.S. 222, 232 (1998). While States must give full effect to judgments issued in other States, the "Clause does not compel a State to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Franchise Tax Bd.*, 538 U.S. at 494 (quotation marks omitted); *see Pacific Emps. Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 504-05 (1939). At most, recognition of plaintiffs' New Jersey firearm licenses simply means

6

recognizing the effect of plaintiffs' licenses *in New Jersey. See* N.J. Stat. Ann. § 2C:58-4(a) (authorizing license holders to "carry a handgun . . . *in all parts of this State*") (emphasis added). Firearm licensing with respect to public carry in New York, however, is a subject matter on which New York is "competent to legislate" and is therefore entitled to apply its own laws. *Franchise Tax Bd.*, 538 U.S. at 494.

Plaintiffs' arguments to the contrary would lead to absurd results. According to plaintiffs, New York is required to give effect to licenses issued by any other State, including States that impose no eligibility requirements on firearm-license holders beyond the federal disqualifiers specified in 18 U.S.C. § 922. Under plaintiffs' theory, anyone who obtains a license in those States would be entitled to carry a firearm in New York without complying with any of the additional eligibility requirements imposed on New York's residents, including its age requirement and the mandate to complete firearm safety training and an in-person interview, *see* Penal Law § 400.00(1).

Courts have therefore long recognized the problems that would arise in applying the Full Faith and Credit Clause to state-specific licensing laws. In *State Farm Mutual Automobile Insurance Co. v. Duel*, 324 U.S. 154 (1945), for example, an insurance company incorporated and licensed in Illinois was denied a license to do business in Wisconsin and argued that Wisconsin was required to apply Illinois law to determine its eligibility for a license. The U.S. Supreme Court rejected the argument, reasoning that it would mean "that no State could impose stricter financial standards for foreign corporations doing business within its borders than were imposed by the State of incorporation." *Id.* at 159. As the Court explained, "[t]he full faith and credit

provision requires no such result." *Id.* Similarly, in *Kirkpatrick v. Shaw,* the Eleventh Circuit held that plaintiff was not entitled to practice law in Florida by virtue of his admission to the bar in New York and Oklahoma, because his admission in those States gave him a right to practice only in those States. 70 F.3d 100, 102 (11th Cir. 1995); *see also Giannini v. Real*, 911 F.2d 354, 360 (9th Cir. 1990) (same); *Matter of Kimball*, 40 A.D.2d 252, 254 (2d Dep't) (disbarment in another State does not categorically prevent admission), *rev'd on other grounds*, 33 N.Y.2d 586 (1973). And courts have reached the same conclusion about licenses to practice as a doctor, a pharmacist, or a dentist. *See Tandon v. State Bd. of Med.*, 705 A.2d 1338, 1348 (Pa. Commw. Ct. 1997) (license to practice medicine); *Louisiana Bd. of Pharmacy v. Smith,* 226 La. 537, 549 (1954) (pharmacy license); *State v. Rosenkrans*, 75 A. 491, 500 (R.I. 1910) (dentistry license), *aff'd*, 225 U.S. 698 (1912).

Applying similar reasoning, courts have rejected the argument that a medical marijuana card issued by one State allows an individual to lawfully possess marijuana in another State. *See, e.g.*, *State v. Berringer*, 234 Or. App. 665, 670-71(Ct. App. 2010); *State v. Thiel*, 846 N.W.2d 605, 615 (Minn. Ct. App. 2014); *State v. Forchion*, No. A-4052-12T4, 2015 WL 4661507, at *12 (N.J. Super. Ct. App. Div. Aug. 7, 2015). Courts have also concluded that eligibility to acquire a liquor license in one State, despite a previous conviction, does not entitle the holder to obtain a liquor license in another State. *See, e.g.*, *Guiseppe Pizzeria v. Department of Bus. Regul., Div. of Alcoholic Beverages & Tobacco*, 472 So. 2d 1331, 1132-33 (Fla. Dist. Ct. App. 1985).

8

Courts have taken the same approach in addressing the effect of sex offender registration statutes. For example, in *Rosin v. Monken*, the Seventh Circuit held that a New York plea agreement stating that the plaintiff would not be required to register as a sex offender in New York did not bar Illinois from requiring the plaintiff to register as a sex offender. 599 F.3d 574, 576 (7th Cir. 2010). As the court in *Rosin* explained, "it is a profound mistake to jump . . . to the conclusion that New York can dictate the manner in which Illinois may protect its citizenry." *Id.*; *see also, e.g.*, *Lindsey v. Commissioner of Fla. Dep't of L. Enf't*, No. 22-10420, 2022 WL 4231823, at *3 (11th Cir. 2022) (per curiam) (summary order); *Spiteri v. Russo*, No. 12-cv-2780, 2013 WL 4806960, at *39-40 (E.D.N.Y. Sept. 7, 2013) (citing examples), *aff'd sub nom.*, *Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015); *People v. Arotin*, 19 A.D.3d 845, 846-47 (3d Dep't 2005).

As these precedents show, the Full Faith and Credit Clause does not require States to give effect to the licensing and registration laws of other States. That principle applies with equal force to firearm licenses, where courts have consistently held that States are permitted to apply their own laws and regulations to individuals seeking a license to carry firearms. For example, in *Hamilton v. Pallozzi*, the Fourth Circuit held that Maryland was not required to grant a firearm permit to a convicted felon, even though Virginia, the state of conviction, had restored his right to possess firearms. The Court concluded that Maryland was free to apply its own law, which did not allow a convicted felon to obtain a firearm permit unless he had been pardoned. 848 F.3d 614, 628 & n.15 (4th Cir. 2017). Likewise, in *Commonwealth v.*

9

*Harris*, Massachusetts's highest court held that Massachusetts was not constitution-
ally required to "substitute its statutes for those of New Hampshire" by giving effect
to plaintiff's New Hampshire firearm license.[3] 481 Mass. 767, 774-76 (2019). New
Jersey, plaintiffs' state of residence, has likewise rejected a challenge to its firearm
licensing laws under the Full Faith and Credit Clause. In *Matter of Winston*, the
plaintiff had obtained certificates of relief from his New York criminal convictions
that would have allowed him to apply for a firearm license despite his convictions in
New York. He challenged New Jersey's denial of a license on the basis of the
convictions, arguing that the court was required to give effect to the New York
certificates of relief. The court rejected that argument, concluding that "[t]here is no
constitutional requirement that New Jersey deem [plaintiff] not disqualified for a
permit under its firearms law just because New York has seen fit to do so under its
law." *Matter of Winston*, 438 N.J. Super 1, 8-9 (Super. Ct. App. Div. 2014).[4]

---

[3] In *Commonwealth v. Donnell*, a Massachusetts trial court concluded that
*Bruen* abrogated *Harris* and required Massachusetts to give effect to a firearm license
issued by another State. No. 2211CR2835, 2023 Mass. Super. LEXIS 666 (Mass. Dist.
Ct. Aug. 3, 2023). That decision, which was wrongly decided for all of the reasons
described above, has been appealed by the State to Massachusetts's highest court,
with argument scheduled for September 9, 2024. *See Commonwealth v. Donnell*,
Appeal No. SJC-13561 (Mass.).

[4] *See also Corcoran v. Sessions*, 261 F. Supp. 3d 579, 588 n.18 (D. Md. 2017);
*Moran v. Wisconsin Dep't of Just.*, 2019 WI App. 38, ¶¶ 43-45 (Ct. App. 2019);
*Blackwell v. Haslam*, No. M2012-01991-COA-R3-CV, 2013 WL 3379364, at *17 (Tenn.
Ct. App. June 28, 2013); *Brown v. Handgun Permit Rev. Bd.*, 188 Md. App. 455, 485
(Ct. Spec. App. 2009); *People v. Shear*, 71 Cal. App. 4th 278, 288-89 (Ct. App. 1999);
*Hawkins v. State*, 745 S.W.2d 511, 514 (Tex. Ct. App. 1988).

For the same reason, plaintiffs miss the mark in arguing that New York must give effect to their New Jersey gun licenses because New York allows individuals with driver's licenses from other States to legally drive in New York. *See* Am. Compl. at ¶¶ 158-163. Contrary to plaintiffs' arguments, States are not required by the Full Faith and Credit Clause to give effect to the driver's licenses of other States. *See, e.g.*, *State v. Justesen*, 63 Or. App. 544, 548 (Ct. App. 1983); *State v. Bray*, 774 S.W.2d 555, 556 (Mo. Ct. App. 1989); *see also Thanner v. Director of Revenue*, 518 S.W.3d 859, 863 n.2 (Mo. Ct. App. 2017). Instead, States manage reciprocal recognition of driver's licenses (and license revocation and suspension) by compact. New York, like forty-six other States and the District of Columbia, has joined the interstate Driver's License Compact, which states that it is the public policy of the parties to condition "the reciprocal recognition of licenses to drive and eligibility therefore" on compliance with state and local motor vehicle laws. *See* Driver's License Compact, National Center for Interstate Compacts (n.d.); N.Y. Veh. & Traf. Law § 516.[5]

As this precedent makes plain, New York has no obligation to apply New Jersey's firearm licensing laws within its borders. To the contrary, New York is free to apply its own laws. If plaintiffs wish to carry a firearm in New York, they must apply for a New York license and comply with New York's licensing requirements, just as New York's own citizens are required to do.

---

[5] Available at https://compacts.csg.org/compact/driver-license-compact/ (last visited August 12, 2024).

**B.    The Complaint Fails to State a Claim Under the Second Amendment.**

Plaintiffs' operative complaint addresses the Second Amendment only in passing (*see* Am. Compl. ¶ 161), which is reason alone to merit dismissal of any purported Second Amendment claim. *Cf. Emilee Carpenter, LLC v. James*, 107 F.4th 92, 113 (2d Cir. 2024) (dismissing overbreadth claim where complaint "ma[de] only passing reference to overbreadth"). To the extent this Court addresses the claim on the merits, it should dismiss it because the Second Amendment does not prevent New York from imposing its own licensing regime with eligibility requirements distinct from those required in other States.

In *Bruen*, the Supreme Court articulated a new standard to evaluate Second Amendment challenges. If the plain text of the Second Amendment covers the regulated conduct, the government seeking to regulate that conduct "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17; *see United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (courts should consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition").

However, *Bruen* recognized the necessity and constitutionality of modern firearm licensing requirements, including state-specific requirements. The Court announced that "nothing in [its] analysis" was meant "to suggest the unconstitutionality" of "shall-issue" licensing regimes, explicitly recognizing forty-three States' differing approaches to firearm licensing. 597 U.S. at 38 n.9. While these licensing laws vary, as the Court explained, they "often require applicants to undergo a back-

12

ground check or pass a firearms safety course" and "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)); *see also id.* at 79 (Kavanaugh, J., concurring).

In a post-*Bruen* challenge to New York's firearm licensing requirements, the Second Circuit likewise recognized the facial constitutionality of many of New York's licensing requirements to the extent they serve as "a proxy for dangerousness," based on a "widespread consensus" that "restrictions which prevent dangerous individuals from wielding lethal weapons are part of the nation's tradition of firearm regulation." *Antonyuk v. Chiumento*, 89 F.4th 271, 312 (2d Cir. 2023).[6] New York courts have also rejected Second Amendment challenges to New York's licensing laws by nonresidents following *Bruen. See People v. Guity*, 223 A.D.3d 598, 599 (1st Dep't) (rejecting Second Amendment challenge to New York licensing laws by out-of-state license holder), *lv. to appeal denied*, 41 N.Y.3d 1002 (2024); *cf. People v. Garcia*, 41 N.Y.3d 62, 81 (2023) (Rivera, J., dissenting on other grounds) (same).

As the Supreme Court recognized in *Bruen,* the Second Amendment does not protect the right to carry a firearm without a license issued by the relevant jurisdiction. *See, e.g.*, *United States v. Libertad*, 681 F. Supp. 3d 102, 111 (S.D.N.Y. 2023).

---

[6] The Second Circuit's decision in *Antonyuk* was vacated and remanded for further consideration in light of the Supreme Court's decision in *Rahimi*, 2024 WL 3074728. *See Antonyuk v. James*, No. 23-910, 2024 WL 3259671 (U.S. July 2, 2024). The reasoning and holding of *Rahimi* are both entirely consistent with the Second Circuit's opinion in *Antonyuk,* which remains highly persuasive precedent.

Consistent with that conclusion, history and tradition also strongly support local requirements for a license to carry. Local firearm licensing regimes and related licensing regulations for handling firearms, fireworks, or gunpowder in cities date back to at least the eighteenth century. *See* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 510-11 (2004) (describing early regulations in jurisdictions in a number of States); Joseph Blocher, *Firearm Localism*, 123 Yale L.J. 82, 114-115 (2013) (same). As the Second Circuit has recognized, by the nineteenth century, "cities from across the country" adopted local firearm licensing requirements "without constitutional qualms or challenges." *Antonyuk*, 89 F.4th at 320 (citing Saul Cornell, *The Right to Regulate Arms in the Era of the Fourteenth Amendment: The Emergence of Good Cause Permit Schemes in Post-Civil War America*, 33 U.C. Davis. L. Rev. Online 65, 85 (2021)). By the late nineteenth century, jurisdictions in at least seventeen States had regulations requiring a local license to carry a firearm. *See* Br. of *Amicus Curiae* Patrick J. Charles in Supp. of Neither Party, App. at 2-45, *Bruen*, 597 U.S. 1 (2022) (No. 20-843). For example, an 1893 regulation in Red Lodge, Montana prohibited the carrying of firearms within the town limits "except by permission from the Mayor in writing, which permit shall state the period of time for which it is granted." *Id.* at 36 (citing *Ordinance No. 30: Concealed Weapons* (Sept. 12, 1893), *reprinted in* Red Lodge Picket (Sept. 23, 1893), at 3). An 1895 Spokane, Washington regulation similarly prohibited carrying a firearm without "a special written permit from the Superior Court to carry weapons." *Id.* at 39-40 (citing *Ordinance No. A544: An Ordinance to*

14

*Punish the Carrying of Concealed Weapons Within the City of Spokane* (Jan. 2, 1895),
*reprinted in* The Municipal Code of the City of Spokane, Washington 309-10 (Rose M.
Denny ed., 1896)).

Modern jurisdiction-specific licensing requirements, including New York's
licensing law, are constitutional because they are "consistent with the principles that
underpin" this regulatory tradition. *Rahimi*, 144 S. Ct. at 1898. In particular, modern
licensing requirements, like historical regulations, are designed to ensure that
individuals carrying firearms in a particular locality can be expected to do so safely
given the conditions in a particular community.

**C.    The Complaint Fails to State a Claim Under the Privileges
        and Immunities Clause.**

Plaintiffs' operative complaint does not contain a right-to-travel claim, or any
allegations to support such a claim. Instead, plaintiffs raised the issue only in the
notice of constitutional question served on the State. *See* Notice of Constitutional
Question (March 17, 2023), ECF No. 17. Because the claim does not appear on the
face of the complaint, it must be dismissed. *See* Fed. R. Civ. P. 8(a)(2); *cf. Emilee
Carpenter, LLC*, 107 F.4th at 113.

To the extent the complaint could plausibly be read to contain a right-to-travel
claim, the claim should be dismissed on the merits. The Privileges and Immunities
Clause, U.S. Const. art. IV, § 2, cl. 1, protects several aspects of the right to travel
including, as relevant here, "the right to be treated as a welcome visitor rather than
an unfriendly alien when temporarily present in the second State." *Saenz v. Roe*, 526
U.S. 489, 500 (1999). A challenged restriction violates the Privileges and Immunities

Clause if it: (1) prohibits nonresidents from engaging in an activity that is "sufficiently basic to the livelihood of the Nation" to be deemed a protected privilege; and (2) "is not closely related to the advancement of a substantial state interest." *Supreme Ct. of Va. v. Friedman*, 487 U.S. 59, 64-65 (1988) (quotation marks and alterations omitted).

Plaintiffs' claim fails at the first step of this test because New York law does not prohibit nonresidents from applying for a firearm license. Penal Law § 400.00(1) sets forth the eligibility requirements for firearm licenses in New York, and it contains no requirement that an applicant reside in New York State. Instead, the eligibility provision lays out basic requirements, such as undergoing firearm safety training, meeting in-person with a licensing officer, and submitting statutorily specified information. *See* Penal Law § 400.00(1). There is no bar to nonresidents satisfying these eligibility criteria.

Plaintiffs, however, appear to read a residence requirement into the statute based on a different provision, § 400.00(3), that sets forth procedures for license applications. *See* Am. Compl. ¶ 99. One part of that provision directs that license applications be made to the licensing officer in the city or county "where the applicant resides, is principally employed or has his or her principal place of business as merchant or storekeeper." Penal Law § 400.00(3)(a).

Plaintiffs are incorrect to suggest that this procedural instruction makes in-state residency or employment a substantive eligibility requirement. The eligibility criteria for a firearm license are separately set forth in stated § 400.00(1) and do not

include a state-residency requirement. Moreover, Penal Law § 400.00(7) separately sets forth requirements for a license that is "issued to a noncitizen, or to a person not a citizen of and usually a resident in the state." The statutory context thus indicates that the quoted language of § 400.00(3)(a) is a venue requirement for license applications—that is, a procedural rule about where to file an application for a license rather than a limitation on who may acquire a license.[7]

The history of the quoted language of § 400.00(3)(a) further indicates that it was not intended to limit who may apply for a firearms license. Instead, the language was apparently introduced "to prevent New York City residents from obtaining handgun permits in counties where, at the time, investigations of applicants were much less thorough than in the city." *Osterweil v. Bartlett*, 21 N.Y.3d 580, 586 (2013). Hence, the New York Court of Appeals has concluded that the residency language was added "to discourage 'forum-shopping,' rather than to exclude certain applicants from qualifying at all." *Id.*

Even if Penal Law § 400.00(3)(a) were ambiguous as to whether a person must have a New York residence or workplace to apply for a firearms license, the rules of statutory construction require this Court to construe the provision to allow applica-

---

[7] In *Osterweil v. Bartlett*, the New York Court of Appeals held that Penal Law § 400.00(3)(a) does not require an applicant for a firearm license to be domiciled in New York. 21 N.Y.3d 580, 587 (2013). That decision should not be read to hold that residency *is* required. The narrow question before the court in *Osterweil* was whether domicile, as opposed to residency, was required. The question of whether residency was required was not before the court. *See People v. Telfair*, 41 N.Y.3d 107, 119 (2023) (Rivera, J., concurring).

17

tions from nonresidents. Under both New York and federal canons of construction, duly enacted statutes should be interpreted "so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 260-61 (2d Cir. 2014) (quotation marks omitted). Thus, to the extent that the Court were to be concerned that construing § 400.00(3)(a) to exclude nonresidents could potentially implicate the Privileges and Immunities Clause, the provision should be construed to avoid the issue.

In any event, even if Penal Law § 400.00(3)(a) imposed a residency requirement (which it does not), any such requirement would not violate the Privileges and Immunities Clause. Regulations that discriminate against out-of-state residents with respect to privileges protected by the Clause are permissible where "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989) (quotation marks omitted). As the Second Circuit has explained, "the Clause does not demand that a citizen of one State be allowed to carry with him into another state the privileges and immunities which come with citizenship in his state." *Schoenefeld v. Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016).

Here, New York has a substantial public-safety interest in continually obtaining relevant behavioral information about people who apply for and possess firearms licenses. Because people who are neither residents nor in-state workers are more difficult to monitor—at least when they are outside of New York—the allegedly

discriminatory licensing provision is sufficiently related to the State's monitoring interest to withstand a Privileges and Immunities challenge. *See Guity*, 223 A.D.3d at 599 (rejecting Privileges and Immunities challenge to New York's post-*Bruen* firearm licensing scheme); *Bach v. Pataki*, 408 F.3d 75, 87 (2d Cir. 2005) (rejecting Privileges and Immunities challenge to New York's pre-*Bruen* firearm licensing scheme)[8]; *Culp v. Raoul*, 921 F.3d 646, 656-57 (7th Cir. 2019) (rejecting Privileges and Immunities challenge to Illinois's firearm licensing scheme).

Finally, if this Court concludes that plaintiffs' claim turns on an ambiguity in New York law, the appropriate course is to abstain under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941). *Pullman* abstention is appropriate where "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004) (quotation marks omitted). To the extent the Court concludes that Penal Law § 400.00(3)(a) is ambiguous, all of those conditions are met here. This Court should abstain until a state court has had the opportunity to interpret Penal Law § 400.00(3)(a).

---

[8] While the Second Circuit's opinion in *Bach* assumed that only New York residents could apply for a license, 408 F.3d at 81, the issue of whether New York would accept applications from nonresidents was not disputed in *Bach*. In any event, that assumption was subsequently called into question by the New York Court of Appeal's subsequent decision in *Osterweil*, which held that Penal Law § 400.00(3)(a) does not require an applicant for a firearms license to be domiciled in New York. *See Osterweil*, 21 N.Y.3d at 587.

19

## CONCLUSION

For the foregoing reasons, this Court should grant the Attorney General's motion to dismiss the Fifth Claim in plaintiffs' amended complaint, as well as plaintiffs' other claims to the extent they challenge the constitutionality of New York's firearm licensing laws.

Dated:      New York, New York
            August 12, 2024

                                    Respectfully submitted,

                                    LETITIA JAMES
                                      *Attorney General*
                                      *State of New York*


                        By:    /s/ *Sarah Coco*
                               SARAH COCO
                               Assistant Solicitor General

                               28 Liberty Street
                               New York, NY 10005
                               (212) 416-8028

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
SARAH COCO
  *Assistant Solicitor General*
      *of Counsel*
MEGHANA BHARADWAJ
  *Law Intern*

20