UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STUART MEISSNER, JONATHAN ZERON,
JAMES E. ALEMAN, JR. and STEVEN J. SILVESTRO
and others similarly situated.

                    Plaintiffs,                                OPPOSITION TO NYC &
                                                               AG MOTIONS

                                                               2023 CV 01907 (NRB) (VF)


          -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, THE NEW
YORK CITY POLICE DEPARTMENT
LICENSE DIVISION, KEECHANT L. SEWELL,
POLICE COMMISSIONER OF THE CITY OF
NEW YORK, NICOLE BERKOVICH, DIRECTOR
OF THE NEW YORK CITY POLICE
DEPARTMENT LICENSE DIVISION

                    Defendants.
-------------------------------------------------------------------X


### Preliminary Statement

Plaintiff Meissner waited eighteen months to receive his pistol license yet was not even able to get a purchase authorization from the NYPD which they required for him to be able to bring a firearm into NYC until September 23, 2024. Plaintiff Zeron applied for his Special Carry License twenty-seven months ago and now has a license, but every single day we get contacted by people that have waited six, twelve, eighteen plus months without decisions or without being provided their purchase authorization from the NYPD. Under New York State Penal Law 400.00 (4-b), during the processing of applications, "except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any

1

application for a license pursuant to this section written within six month of the date of presentment of such application to the appropriate authority." Plaintiffs Zeron and Meissner did not receive any notice or reason for delay, yet both plaintiffs waited far over the six-month licensing period. Moreover, in an effort to avoid granting licenses, New York has created a policy where New York firearm licenses are invalid in New York city, but New York City firearm licenses are recognized throughout the state. This has clearly led to the influx of applications to New York City's firearm licensing NY CLS § 400(a) asserts that licenses should not take more than six months to grant or deny unless there is a valid reason for the delay. Due to the influx of applicants, New York licenses are taking over a year to be decided without any justification. The deliberate indifference to the impact of these policy considerations is a blatant disregard for the Constitution. The practices of the NYPD Licensing Division and the City of New York are unduly burdensome on Plaintiffs' constitutional right to bear arms. The city up until our lawsuit was not even granting licenses to people residing outside New York State without a business in New York City. Now the city is claiming they will issue firearm licenses to these individuals, and we will eagerly await to see if this actually happens. Because they had previously made it impossible.

The Attorney General believes these claims are "threadbare" and "baseless," thus claiming the plaintiffs have failed to plead a claim for which relief can be granted; however, the plaintiffs' Second Amendment rights are clearly being infringed by the defendants' anti-Second Amendment policies. This serves as another injustice demonstrated through New York's stark history of corrupt licensing officials infringing upon the Second Amendment rights of citizens though deliberate and indifferent policies and practices. First, New York sought to prevent concealed carry permits through the false belief that citizens needed "proper cause" for such licenses. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022)* (self-defense is protected under the Second

Amendment and the "proper clause" abridges that constitutional right). Only eight days after the Supreme Court overturned the "proper cause" requirement to New York's license laws, New York City created the Concealed Carry Improvement Act (CCIA) which is still restrictive and ignored what the Supreme Court told New York.

With the passing of the CCIA, the "good moral character" standard replaced the former "proper cause" requirement and still allows licensing officials to make a right into a privilege. This subjective standard has led to license applicants being denied a license for past actions that have no bearing on the applicants "moral character." *See Dimino v. McGinty,* 210 A.D. 3d 1150, 1152 (N.Y. App. Div. 2022) (plaintiff was denied a license for providing character references who were unaware of his arrest as a minor two decades prior). The spongy and vague "good moral character" requirement has led to New York City officials unfairly denying citizens their Second Amendment right on a subjective basis. *See United States v. Rahimi,* 602 U.S. (2024) (rejecting that a person may be disarmed because he is not responsible).

Moreover, New York City officials have clearly demonstrated their persistence in evading judicial review through by granting licenses promptly after filings of complaints and their new interpretation of NY CLS Penal § 400.00 and NY CLS Penal § 265.20 goes against its plain text. NY CLS Penal § 400.00 states that a firearm license issued outside of New York City is not valid within the city unless specific conditions are met, such as conditions for transporting the firearm. However, NY CLS § 265.20 states that possession of a firearm without a valid New York City license is prohibited. Therefore, unless these specific conditions are met or the individual has a valid New York City firearm license, a citizen cannot legally drive through New York City with their firearm. Defendants cite *Commonwealth v. Harris,* to demonstrate that New York does not need to adopt another state's firearm statutes or rulings as their own but fails to mention that *Harris*

demonstrates that citizens are allowed to drive through jurisdictions where they are not licensed with their firearms without fear of prosecution for unlawful possession of such. 481 Mass. 767 (2019). Firearm possession is not to be viewed as inherently unlawful, yet that is what New York state keeps incorrectly forcing upon its citizens.

Despite the plain text of the New York Penal Law outlawing these actions, the NYPD and Attorney General claim that these laws are well within the status quo of traveling with firearms through NYC's interpretation of the code; however, individuals, like plaintiffs Aleman and Silvestro, could not be granted a license and could not enter New York State without becoming a felon for driving *through* NYC with their firearms, which they are constitutionally allowed to do. While the Attorney General contends this right to travel issue is irrelevant and must be dismissed for failure to appear on the face of the complaint, they are incorrect. This travel issue is crucial evidence of the manipulative practices of the NYPD Licensing Division and City of New York contorting vague and illegal laws to aid in their efforts to deny firearm licenses without judicial review. The NYPD may claim individuals have the right to travel through NYC with their firearms, but this is in direct conflict with the penal law, effectively allowing the NYPD to arrest and charge individuals for possession without a valid license. By enforcing a felony charge on individuals with firearms traveling through NYC.  We have represented people arrested for these charges.

Plaintiff Zeron and Meissner are now licensed, but as a class action, thousands of people are members of the class of people whose rights are being infringed upon or were infringed upon for years. Plaintiffs Aleman and Silvestro would have applied, but they are non-residents of New York State and lack business within New York State. Despite changes in New York City's Code allowing non-residents without a business in New York State to apply for licenses, the NYPD Licensing Division has not begun granting such licenses. Based on the NYPD Licensing Division

and the City of New York's blatant infringements on Second Amendment rights, the plaintiffs clearly state a claim for which relief can be granted and the federal district court has subject matter over the case. Furthermore, the NYPD Licensing Division and the City of New York suspiciously granted plaintiff Meissner's and plaintiff Zeron's firearm license immediately after the filing of this suit. Plaintiff Meissner is licensed in New Jersey and does not have any criminal history. There is no acceptable reason that his application took eighteen months to be approved. While this current action names only four plaintiffs, the City of New York and the NYPD Licensing Division's practices are so clear and outrageous that there are at least hundreds or thousands of other victims who are not well-versed in constitutional law and are unaware that these practices are legally unacceptable. Because of this, it is very conceivable that New York City and the NYPD are evading judicial review and negative publicity by granting licenses at the onset of a suit. In addition, a cursory review of recently filed actions shows many plaintiffs filed Article 78 actions while this case was pending and they all were also waiting over six months, the court must step in and appoint a federal monitor.

Moreover, the plaintiffs assert their claims under 42 U.S.C. § 1983, which was enacted in 1871 as part of the Civil Rights Act of 1871 and is commonly referred to as the "Ku Klux Klan Act." The law's primary purpose was to protect Black Americans from violence and offer a federal remedy to avoid white supremacist groups in power in the postbellum south.[1] Today, the act empowers individuals to bring actions against state and local government officials who violate

---

[1] Scott Michelman, *Happy 150th Anniversary, Section 1983!*, ACLU (Apr. 20, 2021), https://www.acludc.org/en/news/happy-150th-anniversary-section-1983#:~:text=On%20April%2020%2C%201871%2C%20President,violate%20their%20federal%20constitutional%20rights.

their federal and constitutional rights.[2] In an effort to preserve the historical impact of the claim, federal court cases must assess the pleadings requirement in the standard fashion, rather than applying a more stringent or heightened pleading standard when addressing civil rights cases alleging municipal liability. *Leatherman v Tarrant Cnty. Narcotics Intel. and Coordination Unit,* 507 U.S. 163, 163 (1993). New York is among the states with the most restrictive gun licensing laws with a history that shows clear intent to prevent citizens from exercising their Second Amendment rights. Denying the plaintiffs' claim under 42 U.S.C. § 1983 would be a huge disservice to the historical impact of the Act. It once again would allow the government to sidestep the Constitution.

## ARGUMENT

### The Pleadings

Plaintiffs concede to the motion to dismiss the Full Faith and Credit claim; however, all other claims have merit and deserve to be heard. Defendants claim that New York City's gun laws are constitutional, therefore, the plaintiffs have not pled a federal question claim for the Southern District of New York to have subject matter jurisdiction over the case. In *Bowman v. RJM Ctr., LLC,* the court stated that a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be treated similarly to a 12(b)(6) motion. 2015 U.S. Dist. LEXIS 103650. Thus, a motion to dismiss should only be granted if it appears certain that, taking all of plaintiffs' facts as true and resolving all inferences of fact in the plaintiffs' favor, the plaintiffs' claim would not entitle them to relief. *Id.*

---

[2] *Id.*

Taking the plaintiffs' facts as true, the plaintiffs waited far more than the six-month statutory limit to receive a New York City gun license without any notice and without any justification and continue to violate people's rights today. The plaintiffs never received notice of a valid reason for the delay despite waiting over eighteen months for their licenses. The defendants granted Plaintiffs Meissner and Zeron their gun license only after the initial filing of this case. The only inference to be drawn from this timeline is that the defendants were trying to evade judicial review to make Plaintiff's case moot. Based on the facts, defendants are clearly in violation of their own statutory scheme and are blatantly infringing the plaintiffs' Second Amendment right to obtain a valid firearm license in New York City. The court has clear subject matter jurisdiction over this claim. In addition, the emergency change in the "policy" is not granting licenses to people. These people without a residence or principal place of business in New York City, had no way to get licenses, meaning what Plaintiff alleged in the complaint is true. Even if the policy change were true that non-residents without a principal place of business in NYC could apply for a license, the change does not mean licensing officials are issuing licenses in any ay shape or form. In effect, the new emergency policy created a new set of unconstitutional rules for individuals to grapple with as they are unable to be granted gun licenses.

## Safety

The City of New York claims that these restrictive licensing laws are imperative for the safety of NYC. The Attorney General and City of New York bring forward a wealth of case law that supports the notions that the City of New York and NYPD are well within their right to create their own gun licensing laws; however, these arguments are not applicable to the case at hand. The right to keep and bear arms must be considered a right, not a privilege. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 3024 (2010).

7

States and municipalities may create their own guns laws, but they must create a legal, constitutional pathway for citizens to be licensed. The Second Amendment protects an individual's *inherent* right to self-defense rather than a well-regulated militia. *District of Columbia v. Heller,* 554 U.S. 570, 628 (2008). Currently, the NYPD Licensing Division are creating exhaustive unnecessary roadblocks with the reason being a false explanation that it is for safety. Safety can not be used to disarm people.

New York criminalizes people through their vague and unethical practices in order to deprive citizens of their rights. New York's "good moral character" standard gives licensing officials too much discretion in their decision making. Moreover, New York City is arresting and charging individuals with criminal possession of a weapon if the individual was driving through New York City without a gun permit. This is impacting individuals even if they are licensed. Furthermore, until a few weeks ago, New York City did not allow out-of-state individuals to apply for a NYC gun license, effectively barring travel for many individuals. Individuals need to travel without fear of being charged with a violent felony. Still, these changes are expensive, time consuming, and not even guaranteed to be approved without a lawsuit.

The Attorney General claims non-residents are permitted to apply for licenses, therefore, they are treated no differently than residents under the law; however, the NYPD and NYC officials have created policies to aid them in denying these licenses. For example, even if an individual applied for a NYC firearm license, the city gives the individual the run-around. One qualification for firearm licensing is getting fingerprinted by the applicant's local police department, which is not even something these departments do. This is a blatant disregard for the structuring of many municipalities as many local police departments do not offer fingerprinting services, further infringing on the Second Amendment rights of the individual. Moreover, an applicant must submit

8

the seller's signature, bill of sale, and the firearm's authorization number. This is problematic given that it is not common practice for gun stores to keep this information on file or have gone out of business since the purchase of the firearm. This effectively blocks the individual from registering their firearm in New York City with no exceptions available for relief. Documentation of this information does not create a safer environment with firearms.

These policies deprive people of their constitutional right to self-defense and to bear arms and it is clear these violations to be legally allowed must have a clear basis in the text history and tradition of the Second Amendment. Yet these emergency rule changes were not based in text history and tradition. The *complete* history of the "good moral character" requirement is not found in traditional or historical contexts but is instead rooted in a uniquely racist pedigree of the late 1800s. *Rahimi,* 602 U.S. (2024). The "good moral character" requirement allegedly prevents those who are not law-abiding or responsible and potentially pose a risk to society if licensed; however, the term "responsible" is vague. *Id. Bruen* rejected the notion that a person could be denied a firearm license because of a "perceived lack of suitability," which is exactly what the "good moral character" is trying to emulate. *Id.*

Moreover, the "good moral character" requirement burdens the applicant to prove their character rather than burdening the government to prove the applicant lacks the requirement. The need for an affirmative finding that an applicant has a good moral character presumes the applicant does not, which departs from historical statutes conferring the right to concealed carry. *Antonyuk v. Hochul,* 639 F.Supp.3d 232, 303 (N.D.N.Y. 2022). The new emergency license regulations are in conflict with historical context and tradition, further demonstrating the NYPD and NYC's deliberate indifference to individuals' Second Amendment rights and the Attorney General and City of New York's Law Department's complicity in denying individuals their rights. This should

not be difficult it should be easy for legal gun owners to be able to protect themselves in New York State, and in New York City and it should not take a lawsuit to get a license approved.

## CONCLUSION

The NYPD License Division and the City of New York have an administerial duty to process firearm applications within six months. The NYPD and City of New York's blatant disregard for their own policy decisions is depriving citizens of their constitutional rights and must be corrected.

Dated:      White Plains, New York
             October 3, 2024

ROBERT M. SCHECHTER, ESQ
PETER H. TILEM, ESQ.
TILEM & ASSOCIATES, P.C.
ATTORNEYS FOR PLAINTIFFS
188 EAST POST ROAD, SUITE 300
WHITE PLAINS, NEW YORK 10601
914-833-9785
RSCHECHTER@tilemlawfirm.com