UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
STUART MEISSNER, JONATHAN ZERON, JAMES
ALEMAN, JR., STEVEN SILVESTRO,

                Plaintiffs,

        - against -

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, JESSICA TISCH,[1] NICOLE
BERKOVICH, NEW YORK CITY POLICE
DEPARTMENT LICENSE DIVISION,

             Defendants.
-------------------------------------X

**MEMORANDUM AND ORDER**

23 Civ. 1907 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiffs Stuart Meissner, Jonathan Zeron, James Aleman, Jr., and Steven Silvestro (collectively, "plaintiffs"), on behalf of a putative class, raise facial and as-applied challenges to New York State's and New York City's firearm licensing laws.  ECF No. 26 ("AC").

---

[1]    One of the defendants in this action is the Commissioner of the New York City Police Department.  Multiple individuals have held this position during the pendency of this action.  At the time of the filing of the complaint, Keechant L. Sewell served as the Commissioner.  ECF No. 1 ¶ 51.  By the time defendants submitted their motion to dismiss, Edward A. Caban had replaced Ms. Sewell, ECF No. 47 at 1 n.1, and by the time defendants submitted their reply, Thomas G. Donlon had replaced Mr. Caban, ECF No. 55 at 1 n.1.  Mr. Donlon has since been replaced by Jessica Tisch.  See Maria Cramer, Emma G. Fitzsimmons & Chelsia Rose Marcius, Jessica Tisch, sanitation chief, becomes 2nd woman to lead the N.Y.P.D., The New York Times, https://www.nytimes.com/2024/11/20/nyregion/jessica-tisch-nypd-commissioner.html (last visited Mar. 4, 2025).  Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's "successor is automatically substituted as a party" when a public officer "dies, resigns or otherwise ceases to hold office while the action is pending."  Accordingly, current Commissioner Tisch is substituted for former Commissioner Sewell as a party defendant.

The motions before the Court have been filed by the New York City defendants[2] ("defendants" or the "City") and the New York State Attorney General ("NYAG"), as an intervenor. Both the City and the NYAG seek to dismiss plaintiffs' full faith and credit claim, which challenges a New York State statute requiring individuals possessing guns in New York State and New York City to have a license or permit from those jurisdictions. ECF Nos. 45, 48. The NYAG also moves to dismiss plaintiffs' other challenges to New York State's firearm licensing regime. ECF Nos. 48, 49 at 12-19. In brief, the City defendants and the NYAG maintain that New York State has a right to enact a state-specific statute regulating gun ownership and that such statutes do not facially violate the U.S. Constitution.

Plaintiffs' opposition brief states that "[p]laintiffs concede to the motion to dismiss the Full Faith and Credit claim" and acknowledges that "States and municipalities may create their own guns laws." ECF No. 54 ("Opp.") at 6, 8. These concessions should end our discussion. However, plaintiffs' brief continues and addresses issues not advanced in their amended complaint, along with other issues which the parties had previously agreed would not be the subject of the pending motions.

---

[2]    "Defendants" in this action refers to the City of New York ("City"), the New York City Police Department ("NYPD"), the NYPD License Division, the Police Commissioner of the City of New York, and Nicole Berkovich, Director of the License Division (collectively "defendants"). See AC ¶¶ 47-53.

**BACKGROUND**

To put the posture of the case in context, some history is necessary.

**I.    Plaintiffs' Claims**

Plaintiffs are New York and New Jersey residents who, following the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), filed a complaint raising three primary issues. See ECF No. 1; AC ¶¶ 41-46.

First, plaintiffs contend that New York City is unduly delaying the approval process to obtain a firearm license, alleging that plaintiffs' applications took longer than six months to be processed. See AC ¶¶ 5, 11-15, 17-19, 25, 28, 58, 60-62, 64-69, 74-76, 83, 88-92, 136, 144.[3]

Second, plaintiffs challenge the requirement that individuals must obtain a New York City-specific license or permit to carry firearms in New York City. AC ¶¶ 63, 72, 79-82; see also N.Y. Penal Law § 400.00(6) (requiring, as a condition to carry a firearm in New York City, either a City-issued license or a special City-

---

[3]    New York State law requires a "licensing officer" to "act upon any application for a license . . . within six months of the date of presentment of such an application to the appropriate authority" unless "written notice" has been given "to the applicant specifically stating the reasons for any delay." N.Y. Penal Law § 400.00(4-b).  Even though plaintiffs cite this state statute in their amended complaint, see AC ¶ 7, plaintiffs have asserted that the alleged delays in the application process raise constitutional issues rather than state law issues to be resolved in an Article 78 proceeding.  See, e.g., AC ¶¶ 15, 25; Opp. 2 (raising constitutional arguments).  As set forth below, this timeliness issue is not presently before the Court.

issued permit even if the individual had already obtained a New York State license from another county in the state).[4]

Lastly, relying on the full faith and credit clause as well as the Second and Fourteenth Amendments of the U.S. Constitution, plaintiffs oppose the requirement that a valid New York State license is necessary to carry a firearm in New York State. See AC ¶¶ 3, 93-95, 97, 99-102, 157-170; see also N.Y. Penal Law §§ 265.03, 265.20(a)(3) (requiring a valid New York State license to avoid prosecution for criminal possession of a firearm). In support of this challenge, plaintiffs assert that "New York State does not accept the validity of any gun license from any other State," id. ¶ 3, and maintain that the Second Amendment rights of out-of-state residents "do not stop at the New York border," id. ¶ 97. See also id. ¶ 161 ("Plaintiffs are entitled to Second Amendment rights with the seriousness of any other rights and those rights do not end at state or municipal lines or borders."); id. at Fifth Claim ("violation of the Second and Fourteen[th] Amendment to the United States Constitution and the Full Faith And Credit Clause for refusing to accept the validity of firearms licenses of other states"); id. ¶¶ 100-102, 157-170 (similar).

The two New Jersey plaintiffs, James E. Aleman, Jr. and Steven J. Silvestro, further contend that they have "not carried their

---

[4]     As set forth below, this issue is not presently before the Court.

firearms into New York City when they come here for fear of being arrested by the [d]efendants who routinely arrest individuals for possessing firearms in New York while in possession of valid firearms license issued by States other than New York State." <u>Id.</u> ¶¶ 45, 46, 95.  Further, it is alleged that the New Jersey plaintiffs have no legal means of exercising their right to carry a firearm because "[u]pon information and belief, Defendants do not issue licenses to non-residents." <u>Id.</u> ¶ 99.

Altogether, plaintiffs challenge these aspects of New York State's and New York City's firearm regulation through five causes of action: (1) a claim under 42 U.S.C. §§ 1981, 1983 alleging a violation of the Second and Fourteenth Amendments; (2) a "<u>Monell</u> claim for failure to train or properly supervise in violation of 42 U.S.C. § 1983;" (3) a claim alleging a violation of plaintiffs' due process rights; (4) a claim alleging a violation of the due process clause of the Fourteenth Amendment; and (5) a claim alleging a "violation of the Second and Fourteen[th] Amendment to the United States Constitution and the full faith and credit clause for refusing to accept the validity of firearms licenses of other states and other counties in New York State."  AC ¶¶ 103-170. Plaintiffs bring these claims on behalf of a class of "similarly situated individuals who have applied for firearms licenses . . . and have no criminal convictions in their past."  AC ¶¶ 33-40.

## II.  Procedural History

Following the filing of plaintiffs' amended complaint, defendants elected to file an answer instead of moving to dismiss. See ECF No. 28.  In February 2024, the Court directed the City to produce "documents showing the status of the applications of each named plaintiff."  ECF No. 34.  In March 2024, the City submitted the requested documentation, which showed that:  plaintiff Stuart Meissner had received a Rifle and Shotgun Permit and his application for a Premises Residence Handgun License was pending; plaintiff Jonathan Zeron was approved for a Special Carry License; and plaintiffs James E. Aleman, Jr. and Steven J. Silvestro were New Jersey residents who never applied for a firearm license or permit in New York City.  See ECF No. 35; AC ¶¶ 45, 46.

Despite their challenges to the firearm licensing laws of New York State, plaintiffs only asserted claims against New York City defendants.  AC ¶¶ 47-53; see also ECF No. 1 ¶¶ 46-52 (same in initial complaint).  However, in compliance with Rule 5.1 of the Federal Rules of Civil Procedure,[5] plaintiffs filed a notice of constitutional question on March 17, 2023, which raised challenges

---

[5]    If "a state statute is questioned and the parties do not include the state," Rule 5.1 of the Federal Rules of Civil Procedure requires the party that files the pleading "drawing into question the constitutionality of a . . . state statute" to (1) "file a notice of constitutional question stating the question and identifying the paper that raises it," and (2) "serve the notice and paper on the . . . state attorney general."  Fed. R. Civ. P. 5.1(a)(1)(B), (a)(2).

to New York State law.  ECF No. 17.  When the Court did not receive proof of service or a response from the NYAG as of February 22, 2024, this Court issued an order requesting a response from the NYAG as to whether it would exercise its right to intervene.  ECF No. 33.  On March 21, 2024, the NYAG moved to intervene "for the limited purpose of defending the constitutionality of New York's firearm licensing laws."  ECF No. 36.  Counsel for the parties consented to the NYAG's intervention, id., and the Court granted NYAG's motion to intervene in April 2024, ECF No. 37.

Thereafter, the parties and the NYAG agreed to a briefing schedule focused on "Plaintiffs' various challenges to New York Penal Law § 265.20(3)," i.e., the requirement that an individual must have a valid New York State license to carry a firearm in New York State.  ECF Nos. 39, 40.  The parties also agreed to stay plaintiffs' challenge to the requirement that a New York City-specific license or permit is needed to carry firearms in New York City, "pending a decision by the Second Circuit Court of Appeals in Frey v. Nigrelli, No. 23-365 (2d. Cir., argued Jan. 30, 2024)." Id.  Critically, the parties' agreed-upon briefing schedule allowed the parties to complete pre-motion discovery as to the named plaintiffs if they chose to do so, provided a deadline for plaintiffs to file any motion for interim injunctive relief, and permitted plaintiffs to file a cross-motion for judgment on the

pleadings.  ECF Nos. 39, 40.

Pursuant to the briefing schedule, defendants and the NYAG each filed a motion.  Defendants move for a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking to dismiss plaintiffs' claim arising under the full faith and credit clause.  ECF No. 45.  The NYAG moves to dismiss three of plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure:  the full faith and credit claim, ECF No. 49 at 5-11; the Second Amendment claim to the extent it challenges New York State's firearm licensing regime, id. at 12-15; and an unpled right to travel claim, id. at 15-19.

However, plaintiffs did not file any motions for interim injunctive relief, nor did they bring an affirmative cross-motion for judgment on the pleadings.  As a result, though plaintiff's opposition brief touches upon the timeliness issue at various points, Opp. 1-2, 7, 8, plaintiffs' challenge concerning the timeliness of New York City's application process is not presently before the Court, see ECF No. 55 at 4 ("Plaintiffs' claim about the timeliness of the City's licensing determinations is not part of Defendants' motion for judgment on the pleadings."); ECF Nos. 49 at 4 n.2, 56 at 3 n.2 (the NYAG takes no position on plaintiffs' challenges to the City's policies).

In sum, given the procedural history set forth above, the motions addressed in this decision are focused solely on whether New York can require a New York State license to carry firearms within the state.

## LEGAL STANDARDS

Under Rule 12(b)(1), a "case is properly dismissed for lack of subject matter . . . when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  To defeat a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue."  <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011) (citation omitted).

Motions brought under Rules 12(b)(6) and 12(c) are subject to the same standard.  <u>See</u> <u>Bank of New York v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010).  To defeat either motion, a complaint must include "enough facts to state a claim that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.</u>, 60 F.4th 16, 21 (2d Cir. 2023) (same).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

-9-

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. See Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012).

**DISCUSSION**

## I.  Plaintiffs' Full Faith and Credit Clause Claim

As noted supra pp. 2, "Plaintiffs concede to the motion to dismiss the Full Faith and Credit claim," Opp. 6, and plaintiffs' full faith and credit claim can be dismissed on this basis alone. See, e.g., Cotto v. City of New York, No. 17-2845, 2020 WL 1228765, at *3 (2d Cir. Mar. 13, 2020) (affirming dismissal of claims plaintiff expressly conceded); Alvarez v. Cnty. of Orange, N.Y., 95 F. Supp. 3d 385, 398 (S.D.N.Y. 2015) (collecting cases dismissing claim after plaintiff conceded claim in opposition brief).

Nonetheless, in the interest of completeness, we address why plaintiffs' concession is appropriate and required by the law. First, "the Full Faith and Credit Clause, in either its constitution or statutory incarnations, does not give rise to an implied federal cause of action." Thompson v. Thompson, 484 U.S. 174, 182 (1988) (citations omitted). Nor does it give "rise to a

-10-

right vindicable in a § 1983 action." Adar v. Smith, 639 F.3d 146, 153 (5th Cir. 2011).  And, even if plaintiffs had a vindicable right, the full faith and credit clause "does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy." Franchise Tax Bd. of California v. Hyatt, 578 U.S. 171, 176 (2016) (citations and quotation marks omitted). Thus, New York State is not required to substitute its own firearm licensing laws for New Jersey's regime.  Accordingly, plaintiffs' full faith and credit claim is dismissed.

## II.  Plaintiffs' Second Amendment Claim

The NYAG also moves to dismiss plaintiffs' Second Amendment claim on the ground that the Second Amendment does not bar states from establishing state-specific firearm licensing regimes.  ECF No. 49 at 12-15.  Plaintiffs seemingly concede that "States and municipalities may create their own guns laws," but nevertheless contend that New York has not "create[d] a legal, constitutional pathway for citizens to be licensed" due to excessive wait times in the licensing process.  Opp. 8.

We dismiss plaintiffs' Second Amendment claim to the extent it challenges New York State's right to impose its own firearm licensing laws within its own borders.  As the Supreme Court plainly stated in Bruen, "nothing in our analysis should be

interpreted to suggest the unconstitutionality of the 43 States'
'shall-issue' licensing regimes, under which 'a general desire for
self-defense is sufficient to obtain a [permit].'" <u>Bruen</u>, 597
U.S. at 38 n.9 (citation omitted).  In fact, Judge Rakoff of this
District, applying <u>Bruen</u>, held that "'shall-issue' licensing
regimes, so long as they allow persons contemplated by the Second
Amendment to keep and bear arms and are not applied in practice to
frustrate that right, do not even trigger a <u>Bruen</u> inquiry into
whether they are consistent with this Nation's tradition of firearm
regulation." <u>United States v. Libertad</u>, 681 F. Supp. 3d 102, 111
(S.D.N.Y. 2023) (citations omitted).  Accordingly, plaintiffs'
Second Amendment claim is dismissed to the extent it challenges
New York State's right to impose its own firearm licensing laws
within its own borders.

## III. Plaintiffs' Purported "Right To Travel" Claim

In their opposition brief, plaintiffs contend that
individuals have a right to drive through New York City with
firearms, even if they do not have a New York State license.  <u>See</u>
Opp. 3-4, 8.  However, plaintiffs' right to travel claim is not
included in their amended complaint, ECF No. 26,[6] and can be

---

[6]    The Court notes that while "[t]he textual source of the constitutional
right to travel . . . has proved elusive," <u>Att'y Gen. of N.Y. v. Soto-Lopez</u>,
476 U.S. 898, 902 (1986), plaintiffs' amended complaint fails to cite any of
the origins of this right:  "the Privileges and Immunities Clause of Article
IV, the Commerce Clause, the Privileges and Immunities Clause of the Fourteenth
Amendment, [or] the Constitution's general creation of a federal structure of

dismissed on this basis alone.  "A claim must be set forth in the pleadings . . . [and] it is inappropriate to raise new claims" in opposition papers.  Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001) (citations omitted); see also Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint." (citation omitted)).

Moreover, regardless of whether it has been pled, plaintiffs' right to travel claim is meritless.  "To prevail on a [right to travel claim], a plaintiff must demonstrate that the state has burdened nonresident activity that is 'sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause.'"  Schoenefeld v. Schneiderman, 821 F.3d 273, 279 (2d Cir. 2016) (citation omitted).  Because New York State does not prohibit nonresidents from applying for a firearm license, see N.Y. Penal Law § 400.00(1), plaintiffs cannot establish that New York State has burdened nonresident activity at

government," Chan v. United States Dep't of Transportation, No. 23 Civ. 10365 (LJL), 2024 WL 5199945, at *24 (S.D.N.Y. Dec. 23, 2024) (citation omitted).

This claim is not in plaintiff's original complaint, either.  ECF No. 1. Aside from their opposition to the present motions, plaintiffs have only referenced this issue once.  In March 2023, before filing their amended complaint, plaintiffs filed a "notice of constitutional question" which included the following language:  "[w]hether the provisions of Article 265.00 of the New York State Penal Law and Penal Law §265.20 (3), which only permits the possession of a firearm by a person possessing a New York State firearms license issued pursuant to Penal Law Article 400 violates the Constitutional Right to Travel?" ECF No. 17.  As a result of plaintiffs' notice of constitutional question, the NYAG moved to dismiss plaintiffs' right to travel claim.  ECF No. 49 at 15-19.

all. Therefore, even had plaintiffs sought to amend their complaint to include this meritless claim, which they have not, any such motion would be denied as futile.

## IV. Plaintiffs' Unpled Allegations

In addition to plaintiffs' unpled right to travel claim, plaintiffs' opposition includes numerous other unpled allegations. Plaintiffs contest New York State's Concealed Carry Improvement Act's "good moral character" standard, Opp. 2-3, 8, 9, as well as New York City's emergency rules allowing non-residents to apply for a license, id. at 7-10. Specifically, plaintiffs contend that, even if an out-of-state individual applied for a New York City firearm license, the "city gives the individual the run-around" by requiring the applicant to be fingerprinted by the "applicant's local police department, which is not even something these departments do." Id. at 8.

"Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendant[s'] motion to dismiss." K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); see also Black Lives Matter v. Town of Clarkstown, 354 F. Supp. 3d 313, 322 (S.D.N.Y. 2018) ("[N]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss." (collecting cases)).

Moreover, even if plaintiffs could amend their pleadings, plaintiffs' asserted theories would likely fail as a matter of law.  The Second Circuit recently held that New York's Concealed Carry Improvement Act's "good moral character" standard is "not facially invalid because it is not unconstitutional in <u>all</u> its applications."  <u>Antonyuk v. James</u>, 120 F.4th 941, 981 (2d Cir. 2024) (emphasis in original).  The Circuit, in the same decision, notes that where "the plaintiff's injury . . . stems from his personal ineligibility for a license, the plaintiff must prove up that premise either by applying for a license or by making a substantial showing of futility."  <u>Id.</u> at 979.  Therefore, based on the Circuit's opinion, there is a clear question of standing as to whether the two non-resident plaintiffs in this case -- who never submitted firearm applications -- could challenge New York City's emergency rules concerning non-residents.

<u>**CONCLUSION**</u>[7]

For the foregoing reasons, defendants' motion and the NYAG's motion are granted in full.  The Court dismisses the following claims:  plaintiffs' full faith and credit claim, plaintiffs' Second Amendment claim to the extent it challenges New York State's firearm licensing regime, and plaintiffs' unpled right to travel

---

[7]    The Court understands that the NYAG requested oral argument.  However, given our holding and that our decision is based on clear legal doctrine, the Court determined that oral argument would not be productive.

claim.  The Clerk of the Court is directed to terminate the motions

pending at ECF Nos. 45, 48.

Dated:      March 5, 2025
            New York, New York

                                    _____
                                       NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE